Raymond PROFFITT

v.

The MUNICIPAL AUTHORITY OF the BOROUGH OF MORRISVILLE, et al.

Civ. A. No. 86–4604.

United States District Court,
E.D. Pennsylvania.

June 27, 1989.

Randall J. Brubaker, Philadelphia, Pa., for plaintiff.

Denis W. Lanctot, Morrisville, Pa., for defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

The United States Court of Appeals for the Third Circuit has cautioned that attorneys' fee applications have the potential for "assum[ing] massive proportions, perhaps

even dwarfing the case in chief." *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 116 (3d Cir.1976). In the instant case, despite the fact that defendants, in a Consent Decree filed with this Court on June 23, 1988 and entered as a Final Judgment on August 16, 1988, agreed to pay reasonable attorneys' fees, they now take the position, in response to plaintiffs' attorney fee petition, that plaintiff is entitled to no award of attorney's fees. The Court disagrees.

## I.

On August 1, 1986, plaintiff Raymond Proffitt, by and through his attorney, Randall Brubaker, Esq., commenced a citizen's suit against defendants The Municipal Authority of the Borough of Morrisville and numerous other municipalities and individuals (hereinafter "defendants"), pursuant to § 505 of the Federal Water Pollution Control Act ("Clean Water Act"), 33 U.S.C. § 1365. On September 22, 1987, this Court granted partial summary judgment against defendant Municipal Authority of the Borough of Morrisville, declaring it to be in violation of the Act. A non-jury trial was scheduled to commence on May 16, 1988, for the purpose of determining both the liability, if any, of the remaining defendants, as well as the nature of the relief to be awarded. Following extensive negotiations, on the day of trial, the parties reached an agreement in principle and so stated on the record. A Consent Decree was filed with this Court on June 23, 1988. On August 16, 1988, following the forty-five day review period mandated by 33 U.S.C. § 1365(c)(3), this Court entered the Consent Decree as a final judgment. The Consent Decree provided, *inter alia* that "defendants agree to pay plaintiff's reasonable attorney's fees and cost of suit in accordance with 33 U.S.C. § 1365(d)."[1] On October 5, 1988, plaintiff filed a Petition for Attorneys' Fees. Subsequently, on February 22, 1989, plaintiff filed a Supplemental Fee Petition covering fees and expenses incurred in the intervening period.

## II.

Plaintiff's application for the award of attorneys' fees is brought pursuant to Section 1365(d) of the Clean Water Act, which provides in pertinent part:

[T]he court, in issuing any final order in any action brought pursuant to this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing party, whenever the court determines such an award is appropriate.

33 U.S.C. § 1365(d). The Supreme Court, in *Hensley v. Eckerhart*, held that a plaintiff is a "prevailing party" for attorneys' fees purposes if he succeeds "on any significant issue in litigation which achieves some of the benefit ... sought in bringing suit." 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).[2]

The Third Circuit, in *Institutionalized Juveniles v. Secretary of Public Welfare*, provided further guidance to district courts in making the determination of whether a plaintiff is a prevailing party:

To apply the prevailing party standard, it is important first to identify the relief plaintiff sought and, in relevant cases, the legal theories on which the relief was based. Usually a commonsense comparison between relief sought and relief obtained will be sufficient to indicate whether a party has prevailed ... Plaintiffs will be prevailing parties even though the relief they obtained is not identical to the relief they specifically demanded, as long as the relief obtained is of the same general type.

---

1. The Court fully discussed both the procedural history of the instant case and the relief obtained in the Consent Decree in its Opinion of June 22, 1989. *See* Opinion, 716 F.Supp. 837, 838–840 (E.D.Pa.1989).

2. We note that many of the cases cited in the discussion of attorneys' fees dealt with fees recoverable in civil rights cases under 42 U.S.C. § 1988. However, the Supreme Court has held that the same analysis is applicable to fee petitions filed pursuant to environmental statutes. *See Pennsylvania v. Delaware Valley Citizen's Council for Clean Air*, 478 U.S. 546, 106 S.Ct. 3088, 3096, 92 L.Ed.2d 439 (1986).

758 F.2d 897, 911–912 (3d Cir.1985); *see also Abraham v. Perkarski,* 728 F.2d 167, 175 (3d Cir.), *cert. denied,* 467 U.S. 1242, 104 S.Ct. 3513, 82 L.Ed.2d 822 (1984). It is also clear that a party may be considered to be "prevailing" when the litigation is successfully terminated by a consent decree. *See McCann v. Coughlin,* 698 F.2d 112, 128 (2d Cir.1983); *Doe v. Busbee,* 684 F.2d 1375, 1379 (11th Cir.1982).

■ Based upon the record in this case, it is clear, as impliedly conceded by defendants in the Consent Decree, that plaintiff is a prevailing party. As a result of plaintiff's citizen suit, the following relief was obtained: the defendants have agreed to design, construct, and operate their facilities in conformity with both the Clean Water Act and the Pennsylvania Clean Streams Law; to achieve compliance with their NPDES permit; to pay civil penalties for both past and ongoing violations; to set aside money for a monitoring fund to pay for future expenses to be incurred by the plaintiff in the technical and legal monitoring of enforcement; and to permit plaintiff to split effluent samples with defendants in order to insure plant compliance. *See generally Ruckelshaus v. Sierra Club,* 463 U.S. 680, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983).

■ An award of attorney's fees in favor of the prevailing party, however, is not automatic. The "benchmark" of an award under such fee-shifting statutes as the Clean Water Act is that the fees assessed against the non-prevailing party be "reasonable." *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 106 S.Ct. 3088, 3096–3099, 92 L.Ed.2d 439 (1986) (*"Delaware Valley I "*). In determining whether an award of attorneys' fees is reasonable, the policies underlying the statute should be considered. A primary purpose of § 1365(d), as well as that of other federal fee-shifting statutes, is to enhance enforcement of important federal policies through citizen involvement. *Id.,* 106 S.Ct. at 3098. As Judge Becker held in *Student Public Interest Research Group v. AT & T Bell Laboratories (SPIRG v. AT & T):*

Congress provided fee shifting to enhance enforcement of important civil rights, consumer protection, and environmental policies. By providing competitive rates we assure that attorneys will take such cases, and hence increase the likelihood that the congressional policy of redressing public interest claims will be vindicated.

842 F.2d 1436, 1449 (3rd Cir.1988).

The Third Circuit further instructs, however, that while the attorneys' fee award should be "adequate enough to attract competent counsel to the case," *SPIRG v. AT & T,* 842 F.2d at 1448 *citing* Senate Report on § 1988 of the Civil Rights Act, S.Rep. No. 1011, 94 Cong., 2d Sess. 6, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5908, 5913, it should avoid the award of an undue windfall. As the Supreme Court held in *Delaware Valley I:*

These [fee shifting] statutes were not designed as a form of economic relief to improve the financial lot of attorneys, nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client.

106 S.Ct. at 3098. Therefore, it follows that not every expense which might ordinarily be charged a firm's fee paying clients would necessarily be "reasonable" under § 1365(d).

The Supreme Court, in *Blum v. Stenson,* held that the "initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." 465 U.S. 886, 888, 104 S.Ct. 1541, 1544, 79 L.Ed.2d 891 (1984). Courts refer to the product of this equation as the "lodestar." *See Delaware Valley I,* 106 S.Ct. at 3096–99. Determination of the lodestar, therefore, requires the trial court to "exclude from this initial fee calculation hours that were not reasonably expended on the litigation." *Hensley v. Eckerhart,* 461 U.S. at 434, 103 S.Ct. at 1939–40. The Supreme Court has emphasized that the lodestar figure—the product of reasonable hours times a reasonable rate—is strongly presumed to be the reasonable fee:

[T]he figure resulting from this calculation is more than a mere 'rough guess' or initial approximation of the final award to be made. Instead, we found that 'when ... the applicant for a fee carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product *is presumed* to be the reasonable fee.'

*Delaware Valley I,* 106 S.Ct. at 3098 *quoting Blum v. Stenson,* 465 U.S. at 897, 104 S.Ct. at 1548. Upward adjustment of the lodestar figure through application of either a contingency enhancement or quality enhancement, is warranted only under exceptional circumstances. *See SPIRG v. AT & T,* 842 F.2d at 1451–1453.

## III.

■ As discussed *infra,* the parties have been unable to agree upon a reasonable attorneys' fee in the instant case. The Third Circuit, in *Blum v. Witco Chemical Corp.,* has held that hearings concerning fee disputes must be held only where the Court cannot, on the basis of affidavits and other documentation submitted by the parties, fairly decide disputed questions of fact. 829 F.2d 367, 377 (3d Cir.1987); *see also Institutionalized Juveniles v. Secretary of Public Welfare,* 758 F.2d at 910 n. 22; *Sims v. Flanagan,* 756 F.2d 4, 6 (3d Cir.1985). In the instant case, plaintiff has submitted affidavits from his counsel which indicate that the time devoted to the case was recorded on internal time and billing sheets, kept to the nearest tenth or quarter hour as appropriate. The affidavits further recite that the exhibits attached to the Fee Petition constitute a "day by day summary and compilation of those contemporaneous time records." We find, therefore, that plaintiff has submitted sufficiently "accurate record[s] of the amount of time spent and the manner in which it was spent" for this Court to fairly assess attorneys' fees without the necessity of a hearing. *In re Meade Land & Development Co., Inc.,* 527 F.2d 280, 283 (3d Cir. 1985).

### A. Determination of Reasonable Hours Expended

The first inquiry is to determine the number of hours reasonably spent by the plaintiffs' legal counsel in litigating this action. In that regard, the fee applicant has the "burden of showing that the claimed ... number of hours are reasonable." *Blum v. Stenson,* 465 U.S. at 897, 104 S.Ct. at 1547. In determining what hours are reasonably expended on the litigation, "the most critical factor is the degree of success obtained ... Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley v. Eckerhart,* 461 U.S. at 435–36, 103 S.Ct. at 1940–41. As previously stated, we find that the results obtained by plaintiff were sufficiently successful as to warrant his attorney receiving a reasonable, fully compensatory fee.

Plaintiff's counsel requests reimbursement for the following expenditure of hours:

| | |
|---|---|
| Randall J. Brubaker, Esq. | 850.95 |
| Beth Oswald, Esq. | 353.75 |
| Robert R. Gelbaum, Esq. | 136.70 |
| Charles Elliott, Esq. | 30.10 |
| Kenneth Cooper, Esq. | 6.70 |
| Total Attorney Hours | 1378.20 |
| Paralegals | 58.15 |

We are reminded by the Supreme Court that a fee applicant should "exercise 'billing judgment' with respect to hours worked." *Id.* at 437, 103 S.Ct. at 1941. "Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from the his fee submission." *Id.* at 434, 103 S.Ct. at 1939–40. Such "billing judgment" does not necessarily mean that counsel should not be compensated for all hours spent on the case, "but the hours he does seek compensation for must be reasonable." *City of Riverside v. Santos Rivera,* 477 U.S. 561, 106 S.Ct. 2686, 2692 n. 4, 91 L.Ed.2d 466 (1986).

Based upon a careful review of the records, this Court determines that the following specific modifications to plaintiff's

"reasonable hours spent" figure are in order:

(1) Hours claimed for Kenneth Cooper, Esq.

■ Plaintiff's claim of 6.7 hours for Mr. Kenneth Cooper, Esq. will be disallowed. After a thorough review of plaintiff's submissions, the Court finds scant evidence as to exactly what services Mr. Cooper performed or his experience level at the time he performed said services. Indeed, plaintiff's chief counsel, Randall Brubaker, Esq., originally planned on utilizing Mr. Cooper in the litigation but was unable to do so:

> It was our hope to have Mr. Cooper more heavily involved, but personal matters prevented him from doing so.

Affidavit of Randall Brubaker, Esq., at 4. It would appear that the 6.7 hours was primarily expended to orient Mr. Cooper to the ongoing litigation, unnecessarily as it turned out. Without a more detailed resume and description of his services, this Court is unable to extrapolate a reasonable fee for his services. Accordingly, his claim will be disallowed. *See Ohio–Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 776 F.2d 646, 656 (7th Cir.1985).

(2) Hours claimed for Beth Oswald, Esq. and Charles Elliott, Esq.

■ Of the 353.75 hours claimed for Ms. Beth Oswald, Esq., 90.95 hours were devoted to the preparation of the attorneys' fees petition and supplemental pleadings related to the fees issue. In addition, all 30.1 hours of time claimed for Mr. Charles Elliott, Esq., were devoted to the attorneys' fees issue. A significant portion of the attorneys' fees pleadings addressed the issue of contingency enhancement; a claim, as discussed *infra*, which this Court finds meritless. Thus, in marked contrast to the claims contained in the citizen suit, itself, plaintiff, in the fees pleadings, while successfully arguing his entitlement to attorney's fees, raised a clearly identifiable unsuccessful claim for fee enhancement. It is well established that the trial court has the discretion to adjust compensation for the preparation of the attorneys' fee petition as long as it takes into account the same considerations that affect lodestar determinations. *See Black Grievance Committee v. Philadelphia Elec. Co.*, 802 F.2d at 656–57; *Durett v. Cohen*, 790 F.2d 360, 363 (3d Cir.1986).

This Court determines that an award of fees for time expended on this wholly unsuccessful claim would be inappropriate. *See Hensley v. Eckerhart*, 461 U.S. at 436, 103 S.Ct. at 1941; *Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d at 918–19. Indeed, we question the need for plaintiff's chief counsel, a recognized expert in the field of citizen suits, to hire an independent counsel, Charles Elliott, to prepare pleadings concerning the attorneys' fee issue. Accordingly, this Court concludes that a reduction of 20% of the time devoted by Ms. Oswald and Mr. Elliott to the fees petition and supplemental pleadings (approximating time devoted to the wholly unsuccessful claim for fees enhancement) is both reasonable and appropriate. While recognizing that such a reduction is, at best, an approximation as to the extent of unreasonable hours expended, the Court is confident that the reduction serves the dual interests set forth by the Supreme Court of insuring a sufficient fee to attract competent counsel while avoiding the award of an undue windfall or overcompensating for unnecessary and excessive work. *See Delaware Valley I, supra.* Therefore, the following adjustments will be made to the hours claimed for Mr. Elliott and Ms. Oswald concerning the issues of attorneys' fees:

| | Claimed | Reduced by 20% |
|---|---|---|
| Charles Elliott | 30.10 | 24.10 |
| Beth Oswald | 90.95 (fees issue) | 72.75 (fees issue) |
| | 353.75 (total) | 335.55 (total) |

(3) Hours Claimed for Randall Brubaker, Esq.

■ Plaintiff's chief counsel, Randall Brubaker, requests compensation for 850.-95 hours of attorney time. Of that time, 20.7 hours were devoted exclusively to the actual preparation of the attorney fees petition. For the reasons previously discussed, this Court will reduce these hours by 20% from 20.7 to 16.55 hours. In addition, Mr. Brubaker requests compensation for 5.9 hours of time researching DER files and communicating with DER officials from which he ultimately developed notices of intent to sue in this case. As Judge Brown held in *SPIRG v. Anchor Thread:*

> Pre-notice of intent to sue activity is analogous to investigative work and as such, is not compensable.

No. 84–320, slip op. at 4–5, 1988 WL 49177 (D.N.J. May 13, 1988). Indeed, as Judge VanArtsdalen stated, "In cases under the Clean Water Act, the statutorily mandated Notice of Intent to Sue constitutes the beginning of the litigation in much the same way that the filing of a complaint constitutes the beginning of most other cases." *SPIRG v. Monsanto Co.*, No. 83–2040, slip op. at 20–21 (E.D.Pa. Feb. 14, 1989). Accordingly, 5.9 hours of time will be deducted from Mr. Brubaker's lodestar. In addition, the Court will disallow the 3.7 hours of time requested for meetings and discussions with and preparation of releases to the media concerning the litigation of this case. Accordingly, Mr. Brubaker's lodestar will be reduced by 13.75 hours from 850.95 to 837.20.

We have considered and rejected defendants' contention that this Court should apply a general reduction to Mr. Brubaker's lodestar based on the relative lack of complex issues which were presented in this litigation and the allegedly excessive number of hours devoted to discovery and expert witness preparation. *See Delaware Valley I, supra.* While the execution of a consent decree obviated the need for expert testimony and presentation of technical data at trial, it would be wholly unjustified to penalize plaintiff's attorneys for conscientiously preparing the case for the anticipated trial. This Court, in reviewing a petition for attorneys' fees, will not engage in second guessing the sound litigation strategy of plaintiff's counsel.

■ The Court also rejects defendants' bald assertion that the Court should award no fees (or costs) incurred after a January 5, 1988 settlement offer by the defendants. It is well established that a defendant is not liable for attorneys' fees and costs incurred after a pretrial settlement offer, where the judgment recovered by the plaintiff is less than the offer. *See Marek v. Chesny*, 473 U.S. 1, 5, 105 S.Ct. 3012, 3014–15, 87 L.Ed.2d 1 (1985); *Grosvenor v. Brienen*, 801 F.2d 944, 945 (7th Cir.1986). In determining whether the result is more favorable to the plaintiff than the offer he rejected, the attorneys' fees and costs that accrued before the offer must be added to the judgment. *Id.* at 946–48; *Lowden v. Murphy*, 664 F.Supp. 966, 968–69 (E.D.Pa. 1987). A review of the record clearly reveals that the ultimate result obtained by the plaintiff was significantly more favorable than the settlement offer (which offer did not include an offer of attorneys' fees and costs).

With the exceptions discussed above, this Court concludes that plaintiff's counsel have exercised the necessary "billing judgment" by making a "good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. at 434, 103 S.Ct. at 1939–40. Accordingly, the Court will permit the following claimed hours:

| | |
|---|---|
| Randall J. Brubaker, Esq. | 837.20 |
| Beth Oswald, Esq. | 335.55 |
| Robert Gelbaum, Esq. | 136.70 |
| Charles Elliott, Esq. | 24.10 |
| Total Attorney Hours | 1333.55 |
| Paralegals | 58.15 |

B. Determination of Reasonable Hourly Rate

■ To compute the lodestar, the next issue which must be determined is the "reasonable hourly rate" by which plaintiffs' counsel should be compensated. In *Blum v. Stenson*, the Supreme Court held that a fee award is to be calculated "according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." 465 U.S. at 895, 104 S.Ct. 1546. As the Third Circuit held in *Black Grievance Committee v. Philadelphia Elec. Co.:*

The reasonable value of an attorney's time is the price that time normally commands in the marketplace, which is generally reflected in the attorney's normal billing rate.

802 F.2d 648, 652 (3d Cir.1986); *see also In re Fine Paper Antitrust Litigation*, 751 F.2d 562, 590–91 (3d Cir.1984).

However, in the recent case of *SPIRG v. AT & T*, the Third Circuit was confronted with the question of how to best effectuate and apply the *Blum* and *Black Grievance* holdings to a "unique genre of attorneys, who operate for profit but essentially rely on fee shifting statutes." 842 F.2d at 1438. After evaluating alternative approaches, Judge Becker, writing for the Court, adopted the "community market rate" rule for determining fee awards pursuant to the provisions of the Clean Water Act:

> [U]nder the facts of this case, involving a for-profit public interest law firm ... that has an artificially low billing rate charged by attorneys of equivalent skill and experience performing work of similar complexity, rather than the firm's billing rate, is the appropriate hourly rate for computing the lodestar.

*Id.* at 450.

The community market rate is to be established by "affidavits demonstrating 'that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation.'" *SPIRG v. AT & T*, 842 F.2d at 1448 *quoting Blum v. Stenson*, 465 U.S. at 896 n. 11, 104 S.Ct. at 1547 n. 11. Plaintiff has submitted five affidavits stating prevalent rates in Philadelphia for environmental work done. Defendant has not contested nor submitted any evidence concerning these rates. Based upon a review of these affidavits, the Court determines that the reasonable hourly rates for the various attorneys and paralegals involved in this case are as follows:

| | |
|---|---|
| Randall J. Brubaker, Esq. | $150.00 |
| Beth Oswald, Esq. | $ 95.00 |
| Robert Gelbaum, Esq. | $ 80.00 |
| Charles Elliott, Esq. | $100.00 |
| Paralegals | $ 37.50 |

The Court has determined that the use of a single, average rate for paralegals as opposed to differential rates is both more feasible and equitable. The requested rates for the paralegals ranged from $25.00 to $50.00; accordingly, the Court has established an average rate of $37.50.

### C. The Lodestar

Based upon the foregoing discussion, the Court has calculated the following lodestar:

| | | | |
|---|---|---|---|
| Randall Brubaker, Esq. | 837.20 hours $ $150.00/hour | | $125,580.00 |
| Beth Oswald, Esq. | 335.55 hours at $95.00/hour | | $ 31,877.25 |
| Robert Gelbaum, Esq. | 136.70 hours at $80.00/hour | | $ 10,936.00 |
| Charles Elliott, Esq. | 24.10 hours at $100.00/hour | | $ 2,410.00 |
| Paralegals | 58.15 hours at $37.50/hour | | $ 2,180.60 |
| | | Total | $172,983.85 |

In cases involving voluminous fee applications, the "courts have recognized that it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir.1983). Nevertheless, the Court is confident that the lodestar represents a reasonable attorneys' fee in the instant litigation.

### IV.

■ Plaintiff has requested that the lodestar be enhanced 100% due to the contingent nature of the litigation. The Supreme Court's recent decision in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) ("Delaware Valley II) controls this issue. In *Delaware Valley II*, the Supreme Court, in a 4–1–4 decision, upheld the availability of contingency enhancers but, in noting the heavy burden that a plaintiff faces in seeking a contingency enhancement, refused to apply one in the case. As the Third Circuit, in

interpreting *Delaware Valley II*, held in *Blum v. Witco Chemical Corp.*:

> At least five justices have indicated through the tenor of their opinions that the plaintiff has a significant burden to carry to justify a contingency multiplier. Accordingly, the plaintiffs must develop an evidentiary presentation ...

829 F.2d at 380.

In its most recent interpretation of *Delaware Valley II*, the Third Circuit, in *SPIRG v. AT & T*, held that contingency enhancements are to be awarded only in the rare instances where clearly necessary to attract competent counsel. 842 F.2d at 1451–52. Indeed, as Judge Becker stated:

> In the final analysis, however, we rely on the one clear message that we can derive from *Delaware Valley II*: contingency multipliers are only available to the extent they are necessary to attract competent counsel.

*Id.* at 1452. Recognizing that Clean Water Act citizen suit cases are not, "under any general notion of assessing risk," particularly risky cases, Judge Becker affirmed the district court's decision denying a contingency enhancement on the ground that the community market rate granted was sufficient to attract competent counsel:

> Because we feel that in granting the community market rate we have assured that the fee is sufficient to attract competent counsel, we will not disturb the district court's holding that no contingency enhancement was necessary in this case.

*Id.* at 1452; *accord Jenkins v. Missouri*, 838 F.2d 260, 263 (8th Cir.1988); *Jacobs v. Mancuso*, 825 F.2d 559, 561 (1st Cir.1987).

Based upon our thorough review of the record, we conclude that the awarding of a contingency enhancement in the instant case is not warranted. While not intending to minimize plaintiff counsel's efforts, the risk of plaintiff losing this litigation was not particularly great. Indeed, in this case, plaintiff investigated the Discharge Monitoring Reports (DMRs) required to be filed by holders of NPDES permit holders. Information contained in these DMRs can be used to establish the civil liability of the defendant permit holders. *SPIRG of New Jersey, Inc. v. Fritzsche, Dodge & Olcott, Inc.*, 579 F.Supp. 1528, 1538–40 (D.N.J. 1984), affirmed, 759 F.2d 1131 (3d Cir. 1985). As this Court stated in granting partial summary judgment in favor of plaintiff:

> It is well established that NPDES permit enforcement actions are based upon strict liability ... Thus, violations of an effluent limitation imposed by an NPDES permit, without more, automatically constitutes a violation of the Act.

*Proffitt v. Morrisville*, No. 86–4604, slip op. at 3 (E.D.Pa. Sept. 22, 1987). Given the community market rate awarded in the instant case, and noting that both plaintiff's counsel and other exceedingly competent attorneys have not hesitated to file citizen suits under the Clean Water Act, we hold that contingency enhancement is not warranted in this case.

## V.

 Plaintiff's counsel has requested a delay enhancement in the instant case. The Third Circuit has recognized that delay constitutes an appropriate reason for increasing the lodestar. *SPIRG v. AT & T*, 842 F.2d at 1453; *Black Grievance Committee v. Philadelphia Electric Co.*, 802 F.2d at 655–56; *In re Fine Paper Antitrust Litigation*, 751 F.2d at 588. The Third Circuit, in *SPIRG v. AT & T*, explained the policy behind compensating plaintiffs for delay:

> Payment today for services rendered long in the past deprives the eventual recipient of the value of the use of the money in the meantime ...

842 F.2d at 1453. Indeed, in *Library of Congress v. Shaw*, the Supreme Court explained that a fee enhancement to compensate for delay is essentially equivalent to an award of interest. 478 U.S. 310, 106 S.Ct. 2957, 2965–66, 92 L.Ed.2d 250 (1986).

Plaintiff's entitlement to delay compensation requires the presentation of " 'developed evidence of the costs to plaintiffs of receiving the delayed payment for services.' " *SPIRG v. AT & T*, 842 F.2d at 1453 *quoting Institutionalized Juveniles v.*

*Secretary of Public Welfare,* 758 F.2d at 922. We find that plaintiff has met the requisite burden by supplying, *inter alia,* prevailing market rates and interest rates for the period of time during which payment was delayed. In addition, plaintiff's chief counsel, Mr. Brubaker, submitted an affidavit in which he stated that he "was compelled to periodically draw upon a bank line of credit at rates in excess of prime rate in order to pay office and staff expenses."

Plaintiff's counsel requested a total of $13,675.69 in delay enhancement.[3] Defendants have not contested the methodology employed in reaching this figure. However, this Court has reduced the requested total to reflect the earlier specific modifications made to the lodestar figure. Accordingly, this Court will award a delay enhancement of $12,900.00.

## VI.

Based upon the foregoing analysis, this Court will award the following attorneys' fees:

| | |
|---|---|
| Lodestar | $172,983.85 |
| Delay Enhancement | $ 12,900.00 |
| Total | $185,883.85 |

## VII.

In addition to reasonable attorneys' fees, plaintiff's counsel requests an award of $17,556.56 for litigation expenses and costs, including $11,526.48 for expert witness fees.

### A. Expert Witness Fees

■ Section 505(d) of the Clean Water Act specifically includes expert witness fees as an awardable cost of litigation. 33 U.S.C. § 1365(d). The Court has reviewed the qualifications of each of the experts and the nature of their proposed testimony (contained in the pretrial order) as well as their invoices. While the Court recognizes that their testimony was ultimately not necessary given the settlement of the case, we find that their testimony would have been indispensable to the case had it gone to trial. *See Roberts v. S.S. Kyriakoula D. Lemos,* 651 F.2d 201, 206 (3d Cir.1981). Accordingly, we will allow the full claim of $11,526.48 in expert witness fees.

### B. Allowable Costs Under 28 U.S.C. § 1920

■ Plaintiff seeks reimbursement of $4,153.76 in costs taxable under 28 U.S.C. § 1920. Specifically, plaintiff seeks costs for printing/photocopying ($2,324.81); subpoena service and witness fees ($703.95); filing fee ($60.00); and depositions ($1,065.80). The Court finds that the amount of printing and photocopying undertaken by plaintiff was excessive and will, therefore, reduce the amount by 50% to $1,162.00. The Court is satisfied that the remaining costs constitute reasonable expenditures on the part of plaintiff's counsel. Accordingly, the Court will allow a total of $2,991.75 in costs under 28 U.S.C. § 1920.

### C. Other Costs of Litigation

■ The description of costs of litigation in Section 505(d) of the Clean Water Act is exemplary rather than exclusive. Indeed, the phrase has been interpreted by the D.C. Circuit broadly, allowing all expenses incurred in the course of litigation including travel and postage. *See Alabama Power v. Gorsuch,* 672 F.2d 1, 5 (D.C.Cir.1982). Plaintiff specifically seeks reimbursement for long distance telephone calls ($180.85); postage and federal express fees ($464.39); travel ($19.00); notary ($2.00); photocopying—in house ($379.63); and miscellaneous expenses ($138.07). Plaintiff has failed to provide any documentation concerning long distance phone charges, travel, notary, and in-house photocopying. Consequently, none of these expenses can be reimbursed. Plaintiff has documented expenses of $270.00 for federal express and $99.56 for research. These

---

**3.** Plaintiff reached this figure by applying, for each calendar year of the litigation, one-half the average prime interest rate to the lodestar amount earned for that year. *See Institutional-* *ized Juveniles v. Secretary of Public Welfare,* 758 F.2d at 923–24; *Black Grievance Committee v. Philadelphia Electric Co., supra.*

expenses in the amount of $369.56 will be allowed.

In summary, this Court will allow the following costs in this litigation:

Expert Witness Fees ....... $11,526.48
Allowable Costs ............ $ 2,991.75
Other Costs ................ $ 369.56
 Total......... $14,887.79

### VIII.

For the reasons stated, this Court will award attorneys' fees and costs in the following amounts:

Attorneys Fees
Lodestar .................. $172,983.85
Delay Enhancement ....... $ 12,900.00
 Total........... $185,843.85

Costs
Expert Witness Fees ...... $ 11,526.48
Allowable Costs .......... $ 2,991.75
Other Costs .............. $ 369.56
 Total........... $ 14,887.79

### ORDER

AND NOW, this 27th day of June, 1989, for the reasons set forth in this Court's Memorandum of June 27, 1989,

IT IS ORDERED that defendants shall pay to plaintiff's counsel, Randall J. Brubaker, Esq., the amount of $185,843.85 in attorneys' fees plus the amount of $14,887.79 in costs, for a total award of $200,731.64.