**ATLANTIC STATES LEGAL FOUNDATION, INC.,**
Plaintiff,

v.

**UNIVERSAL TOOL & STAMPING CO., INC., Defendant.**

**Civ. No. F 87–0095.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

July 14, 1992.

See also 786 F.Supp. 743.

Peter G. Mallers, II, Beers, Mallers, Backs, & Salin, Fort Wayne, Ind., Richard J. Kilsheimer, Kaplan and Kilsheimer, New York City, for plaintiff.

Milford M. Miller, Miller, Carson & Boxberger, Fort Wayne, Ind., for defendant.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on the plaintiff's Motion for Attorney Fees and Expenses pursuant to Section 505(d) of the Federal Water Pollution Control Act ("Clean Water Act") as amended, 33 U.S.C. § 1365(d). The parties have fully briefed this issue, and for the following reasons, the Motion for Attorney Fees and Expenses will be GRANTED IN PART and DENIED IN PART.

### Procedural Background

On April 17, 1987, the plaintiff, Atlantic States Legal Foundation ("Atlantic States"), commenced a citizens' suit against Universal Tool & Stamping Co., Inc. ("Universal Tool"). Representing Atlantic States in this litigation are Richard J. Kilsheimer of Kaplan & Kilsheimer, a firm based in New York City, and Peter G. Mallers of Beers, Mallers, Backs & Salin, a firm based in Ft. Wayne, Indiana. Representing Universal Tool is Milford M. Miller of Miller, Carson & Boxberger, a firm based in Ft. Wayne, Indiana. In its complaint, Atlantic States charged Universal Tool with violating the Clean Water Act by discharging excessive amounts of pollutants in violation of Universal Tool's permit limitations under provisions of the Clean Water Act. On April 23, 1990, this court awarded partial summary judgment to the plaintiff on the issue of liability.

Following a five-day bench trial, the court ordered the defendant to pay a civil penalty of $450,000.00. In addition, the court instructed the plaintiff to file a motion for attorney fees and costs, which they have done. The plaintiff is requesting an award of $390,057.47,[1] which includes attorney fees, expert witness fees, and out-of-pocket expenses.

Universal Tool has identified five objectionable areas in Atlantic State's fee petition. First, it objects to the hourly rates sought by the plaintiff's New York attorney and his associates. Second, the defendant objects to both the rate and number of hours billed by attorney Mallers. Third, the defendant seeks an overall reduction in the number of compensable hours based on the plaintiff's level of success. Fourth, the defendant objects to the expenses for expert witnesses, and lastly, it objects to certain general expenses as excessive. Based on these objections, the defendant suggests an award of only $102,205.44. The court will only address those aspects of Atlantic States' fee petition that are contested by the defendant.

*Standard for Awarding Attorney Fees*

This motion for attorney fees is governed by § 505 of the Clean Water Act which provides in pertinent part that

> [t]he court, in issuing any final order in any action brought pursuant to this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such an award is appropriate. 33 U.S.C. § 1365(d).

The court recognizes the importance of the fee shifting provision to promote enforcement of the substantive provisions of the Clean Water Act, thereby carrying out Congress' intent in creating a cause of action for citizen suits. *See e.g., Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559–60, 106 S.Ct. 3088, 3095, 92 L.Ed.2d 439 (1986); *Atlantic States Legal Foundation v. Tyson Foods, Inc.*, 897 F.2d 1128, 1143 (11th Cir.1990); and *Proffitt v. Municipal Authority of the Borough of Morrisville*, 716 F.Supp. 845, 848 (E.D.Pa.1989), *aff'd*, 897 F.2d 523 (3d Cir.1990).

In determining an award of fees, the "lodestar approach" is used. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983);[2] *City of Riverside v. Rivera*, 477 U.S. 561, 568, 106 S.Ct. 2686, 2691, 91 L.Ed.2d 466 (1986); and *Leffler v. Meer*, 936 F.2d 981, 985 (7th Cir.1991). The lodestar is obtained by multiplying the number of hours reasonably expended by the reasonable hourly rate. *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. This court must therefore determine whether the rates and hours Atlantic States is requesting are reasonable. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 562, 106 S.Ct. 3088, 3097, 92 L.Ed.2d 439 (1986) (noting that the "benchmark" for an award under a fee shifting statute such as the Clean Air Act is that the fees and expenses requested must be reasonable). When awarding attorney fees, the district courts are obliged to state the reasons for giving the award, *Lenard v. Argento*, 808 F.2d 1242 (7th Cir.1987), and with this in mind, the court now turns to the plaintiff's request.

I. Determining the Lodestar

A. *Applicable Forum Rate*

Normally, an attorney is compensated according to the prevailing market rate in the legal community in which the

1. The plaintiff originally requested fees and expenses in the amount of $453,791.67, but pursuant to corrections and concessions filed with the court on June 19, 1992, the plaintiff now requests $390,057.47.

2. *Hensley* was a case involving fees under the Civil Rights Attorney's Fee Award Act, 42 U.S.C. § 1988. In *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 556, 106 S.Ct. 3088, 3093, 92 L.Ed.2d 439 (1986), the Court held that judicial decisions in § 1988 awards were applicable in determining awards under the Clean Air Act because the acts were similarly worded and shared a common purpose. By the same rationale, § 1988 cases are applicable to the Clean Water Act, which is also similarly worded and has a similar purpose.

case is tried. *Blum v. Stenson,* 465 U.S. 886, 892, 104 S.Ct. 1541, 1545, 79 L.Ed.2d 891 (1984). In this case, however, the plaintiff is seeking a rate for attorney Kilsheimer that is commensurate with a reasonable rate for the New York area rather than for the Northern District of Indiana. It is the plaintiff's contention that when it started this litigation, competent Indiana counsel was unavailable.[3] Therefore, the plaintiff contends that because Atlantic States had to go outside of the forum it should be allowed to collect at non-forum rates.

The Seventh Circuit has stated in *Chrapliwy v. Uniroyal, Inc.,* 670 F.2d 760 (7th Cir.1982) *cert. denied,* 461 U.S. 956, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983), that in fee petitions, the court must question whether services of like quality are truly available in the locality where the services are rendered. *Id.* at 769. The burden of showing that Kilsheimer and his associates are entitled to New York rates rests on the plaintiff. *Blum,* 465 U.S. at 897, 104 S.Ct. at 1548; *Hensley,* 461 U.S. at 430, 103 S.Ct. at 1938.

Clearly, the question before the court is whether the level of expertise needed to bring this case was available in the Ft. Wayne area legal community. In support of its position, the plaintiff cites its efforts to secure counsel. These consisted of one interview Atlantic States conducted with an attorney in Indianapolis, and consultation with its Indiana members to see if any of the members could refer Atlantic States to counsel. Neither of these efforts yielded an Indiana attorney.

The plaintiff contends that counsel was unavailable, yet the limited nature of its efforts does not support this position. Just because the plaintiff was unable to find counsel is not evidence that competent counsel was unavailable. *Bird v. Mahon,* No. F88–60, 1990 WL 430733 (N.D.Ind. June 28, 1990).[4] The plaintiff admitted that it had made "no special effort to obtain counsel in the Northern District of Indiana," and consulting one lawyer is not enough to establish the fact that competent counsel was not available. Given the wide availability of numerous types of legal directories, the plaintiff was not without guidance in locating a competent Indiana attorney.[5]

As to the plaintiff's contention that this was specialized litigation which required expertise, the court does not agree. "Plaintiffs were not presented with an unduly difficult, complex, or novel case or one that required a huge amount of time in preparation. Discharges exceeding permit levels create a type of 'no fault' liability." *Student Public Interest Research Group of New Jersey v. Monsanto Co.,* 721 F.Supp. 604, 610 (D.N.J.1989) (commenting on litigation under the Clean Water Act). The court further notes that the defendant's attorney, who had never handled a case under the Clean Water Act previously, did not seem to be lacking in the expertise needed to handle the case.

Atlantic States stated that because of its inability to pay fees on a regular basis, it needed an attorney who would work on a contingency fee basis. However, in the instant case, there was little contingency about the liability finding, since the defendant had a history of National Pollutant Discharge Elimination System ("NPDES") violations. Because of the strict liability nature of a violation under the Clean Water Act, it would be more likely for an attorney

---

**3.** Not only does the plaintiff stress the complexity of the case, and the need therefore for an experienced attorney, but also notes that it was necessary for the attorney to agree to take the case on a contingency fee basis.

**4.** In *Bird,* this court did not find either the fact that Mr. Bird could not find counsel in Ft. Wayne or the attorney's testimony that he had experienced similar problems in finding Ft. Wayne attorneys sufficient evidence to support the outside rates that were petitioned for. *Id.* at 14, n. 7.

**5.** This district has recognized previously that there exists a competent environmental bar in Indiana. *U.S. (E.P.A.) v. Environmental Waste Control, Inc.,* 737 F.Supp. 1485, 1498 (N.D.Ind. 1990). In that case, involving solid waste disposal, the plaintiff was represented by an attorney from South Bend, Indiana who began working on the case in 1987. An attorney affiliated with Atlantic States also participated in that litigation.

to receive a fee in Clean Water Act litigation than in many other common contingency fee cases. Thus, Atlantic States' requirement that counsel work under a contingency fee arrangement was not a significant encumbrance on its ability to secure counsel. In the legal community, the contingency fee is a common business arrangement. In his affidavit to the court, attorney Kimbrough stated that he would have accepted the plaintiff's case, and would not have considered the contingency fee requirement an obstacle to his acceptance.

For the foregoing reasons, the court has found that Atlantic States has not met its burden of proof in demonstrating that it was necessary to seek counsel outside of the Northern District of Indiana. Having determined, therefore, that the plaintiff's counsel should be compensated at a rate reasonable for the Northern District of Indiana, we now address what a reasonable rate is.

### B. Reasonable Market Rate

█ In determining what a reasonable market rate for attorney Kilsheimer and his associates is, the court must look to the rate charged by attorneys of similar skill and experience in the relevant community. *Blum,* 465 U.S. at 895, 104 S.Ct. at 1547; *In re Continental Illinois Securities Litigation,* 962 F.2d 566, 568 (7th Cir.1992). The plaintiff argues that attorney Kilsheimer should be awarded a rate on the high end of the pay range for the Fort Wayne area because of the complexity of the case, the long duration, and the quality

of his representation. The defendant, on the other hand, urges the court to give Kilsheimer only $125.00 per hour. This is the rate attorney Miller, a litigator with thirty years experience, billed the defendant. The parties have submitted various affidavits placing the range of billing rates for the Fort Wayne, Indiana area from between $90.00 and $200.00.[6]

In *Fort Wayne Women's Health Organization v. Brane,* No. F90–66, 1991 WL 405179 (N.D.Ind. February 20, 1991), this court, reflecting on its previous decision in *Bird v. Mahon,* F88–60, 1990 WL 430733 (N.D.Ind. June 28, 1990), noted that the prevailing range for experienced civil rights litigators in Fort Wayne ranged from $80.00 to $175.00 per hour. This comports with the fee range for environmental litigation in Indiana, $85.00 to $175.00 per hour, recognized in *U.S. (E.P.A.) v. Environmental Waste Control, Inc.,* 737 F.Supp. 1485, 1498 (N.D.Ind.1990).[7]

The court agrees that attorney Kilsheimer did do an excellent job conducting the case, but, for the aforementioned reasons, does not agree with the plaintiff that the case itself required expertise in environmental litigation. The court therefore concludes that a reasonable rate given Kilsheimer's litigation experience is $150.00 per hour. Universal Tool suggests that Kilsheimer receive the same compensation as attorney Miller who billed the defendants at $125.00 per hour. However, this rate should not act as an upper limit on what this court awards Kilsheimer.[8] The defense counsel had the luxury of regular

---

**6.** The plaintiff has submitted the affidavit of attorney John R. Burns who has stated that for specialized litigation, the rates for attorneys with fifteen or more years of experience in the Northern District of Indiana frequently range from $150.00 to $200.00. However, the court does not find that this was specialized litigation. (*See supra* p. 525). The defendant has submitted the affidavit of attorney J. Frank Kimbrough who stated that hourly rates for trial work in Allen County, Indiana (Ft. Wayne) range from $85.00 to $125.00. However, the court notes that this range describes any general "trial work," and that Mr. Kilsheimer is an experienced litigator. (*See infra* note 7).

**7.** In that case, Judge Miller awarded attorney Hamilton $150.00 per hour in a case involving

violations of the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6901 *et seq.* In justifying the award, the court noted that "[w]hile Mr. Hamilton is not an environmental specialist, he is an attorney with more than twenty years experience." *Id.* at 1499. The defendants' attorney billed at $125.00 per hour.

**8.** Under *Blum,* the court should award Kilsheimer a "reasonable rate" for the Fort Wayne area. *Blum,* 465 U.S. at 886, 104 S.Ct. at 1541. The fact that the defendant's attorney charges perhaps less than what the market for legal services would allow for an experienced litigator should not affect the court's determination of what a "reasonable rate" for Kilsheimer should be.

periodic payment throughout the course of this litigation. Moreover, unlike Kilsheimer who was working under a contingency fee arrangement with at least some small chance of failure, Miller was assured of payment. Hence, there is an economic justification for Miller's lower rate.

The defendant also challenges the rate billed by attorney Mallers who is requesting $140.00 per hour. Commensurate with the rates described above, the adjustments already made to Kilsheimer's rate, and the fact that Mallers played only a limited role in the actual litigation, his fee shall be set at $125.00 per hour.

As stated in its later filings, the plaintiff will not contest the defendant's suggested reduction in the rate for attorney Levine. The court will, therefore, fix Levine's rate at $85.00 per hour, as suggested by the defendant. The plaintiff's additional filings also revised the billing rate they are seeking for the work done by third-year law student Ariana Tadler. The plaintiff stated that in the original affidavit, the figure of $175.00 per hour was a typographical error and should have been $75.00 per hour. Given the fact that $75.00 is also the rate suggested by the defendant, the court will award the rate of $75.00 per hour to Tadler.

### C. Reasonable Hours

■ While the defendant has stated that the hours the plaintiff spent on the case were not excessive, it is seeking a drastic reduction in the hours billed because of what the defendant perceives as the limited success of the plaintiff at trial.[9] More specifically, the defendant reasons that since the court assessed a civil penalty that was only 18% of the amount the plaintiff suggested in closing arguments,[10] Atlantic States should only be compensated for 18% of the time it billed after its motion for summary judgement was granted. The defendant, though, cites no legal authority for this innovative argument.

■ Any general reduction, such as the defendant suggests, should only be employed when a plaintiff loses on a claim that is distinct in all respects from the successful claims. *See Hensley*, 461 U.S. at 440, 103 S.Ct. at 1943; *Graham v. Sauk Prairie Police Commission*, 915 F.2d 1085, 1109 (7th Cir.1990). In awarding attorney fees to the prevailing party, even if the plaintiff did not ultimately prevail on all claims, he will be awarded all of his fees as long as the claims are related. *Wallace v. Mulholland*, 957 F.2d 333 (7th Cir.1992). Even in cases where there are separate claims, there is no automatic reduction in the lodestar. *See e.g., Kurowski v. Krajewski*, 848 F.2d 767, 776 (7th Cir.1988), *cert. denied*, 488 U.S. 926, 109 S.Ct. 309, 102 L.Ed.2d 328 (1988) (noting that lawyers inevitably spend time in blind alleys); and *South Rothschild Liquor Mart, Inc. v. Kozubowski*, 775 F.Supp. 1129, 1131 (N.D.Ill. 1991) (stating that alternative legal theories, raised in good faith, though ultimately rejected, should not be grounds for reducing a fee).

In the instant case, the efforts made in the suit to determine the appropriate penalty cannot be allocated to what was successful and what was unsuccessful, nor can the efforts of the plaintiff be said to be distinct in any respect so as to be grounds enough for a general reduction in the lodestar.[11]

---

9. In its Memorandum in Opposition to Plaintiff's Application for Fees and Expenses, the defendant noted what it perceived as a discrepancy between the computerized billing statement appended to the Affidavit of Richard J. Kilsheimer, and the number of hours requested in that affidavit. However, those "discrepancies" are explained in note 4 of the Kilsheimer Affidavit.

10. During closing arguments, the plaintiff requested that the court assess a civil penalty against the defendant in the amount of $2,500,-000.00. This court ordered the defendant to pay $450,000.00.

11. The defendant suggests that the court apply a multiplier of .18 to the plaintiff's post-summary judgment fees. However, in logically keeping with the defendants "inverse lodestar theory," the court could just as reasonably use a multiplier of eighteen since the defendant was assessed a penalty that was eighteen times greater than the penalty the defendant suggested in closing arguments. The defendant presumably would resist such a notion.

The court, therefore, will not reduce the hours the plaintiff billed after the motion for summary judgment on liability was granted.

### D. Duplicative Time

The defendant further requests eliminating 54.3 hours billed by attorney Mallers which it considers duplicative.[12] Mallers billed these hours when he accompanied Kilsheimer to various depositions, hearings, conferences, and the trial. The challenged times were, however, justifiable instances of having two attorneys present and are not considered duplicative by the court. "It is not uncommon, especially in complex litigation, to have more than one attorney present in the courtroom." *Women's Health Organization* at 6. Because Mallers participated in the trial, it was appropriate that he attend the pretrial conferences and settlement conferences.

The only other instances of alleged duplicative time were Mallers' attendance at the Summary Judgment hearing and at some of the depositions. But again, these were justifiable instances of having two attorneys present, and could have been valuable in terms of any consultation and exchange between Mallers and Kilsheimer. "The use of more than one lawyer is common in legal practice. Consultation among lawyers insures that they do not overlook significant facts or injuries." *Bohen v. City of East Chicago,* 666 F.Supp. 154, 157 (N.D.Ind. 1987). Furthermore, over the course of this litigation, in which the plaintiff's attorneys have spent nearly 2,000 hours, the amount of time that Mallers and Kilsheimer spent together, which is considered to be duplicative by the defendant (54.3 hours), is minute, especially given the fact that nearly half of the contested time occurred during the trial.

### E. Travel Hours

Relating to the number of hours reasonably spent by the plaintiff, the defendant's final objection concerns travel time billed by the plaintiff's attorneys. Specifically, the defendant challenges fifty of Kilsheimer's hours and ten of Tadler's hours that were billed while the two were travelling between Ft. Wayne and New York. It is the defendant's position that this time should be disallowed given the fact that it was unnecessary for Atlantic States to hire an attorney out of the district. However, the plaintiff has made an undisputed showing that during their trips to and from Indiana, neither Kilsheimer nor Tadler billed for time in which they were not working on the case. For this reason, the court finds that there is no basis for reducing those hours.

### II. Expenses

### A. Expert Witness Fees

The defendant has challenged some of the expenses that the plaintiff is requesting. Most noteworthy is the defendant's request that the court disallow $50,960.60 in expert witness fees. The defendant reasons that since the court did not find all of the plaintiff's expert testimony credible, the fees and expenses for those witnesses should be disallowed. This argument is without merit. The nature of this litigation requires that both sides present technical evidence to establish the extent of damages once liability under the Clean Water Act is established. The importance and necessity of hearing expert testimony in matters of this nature is supported by the fact that § 505 of the Clean Water Act specifically provides for the recovery of expert witness fees. Simply because the court found some evidence more credible than other evidence does not lessen its value when the court is considering the level of damages.

Section 309(d) of the Clean Water Act itself provides that in determining an appropriate sanction, the court shall consider the following factors:

the seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to

---

**12.** The alleged duplicative time of Mallers breaks down as follows: Pre-trial Conferences (8.8 hours); Settlement Conferences (12.6 hours); Depositions (8.5 hours); Summary Judgment Hearing (2.0 hours); and Trial (22.4 hours).

comply with the applicable requirements, the economic impact of the penalty on the violator, and such other matters as justice may require.

The defendant states that nothing in the Act mandates that evidence be given on those issues, but the court must be able to hear evidence on both sides in order to arrive at a just and reasoned conclusion. The court finds that the evidence the expert witnesses presented was consistent with the type of evidence needed to bring a Clean Water Act case, and that there was nothing unreasonable in the plaintiff's request for these fees. The expert witness fees, therefore, will be granted in full.

### B. Other Expenses

The defendant also objects to the express mail charges and secretarial overtime billed by the plaintiff,[13] stating that the charges should be disallowed as excessive since the plaintiff has not justified the use of those services. The Seventh Circuit has stated that district courts should disallow particular expenses that are excessive. *Henry v. Webermeier*, 738 F.2d 188, 192 (7th Cir.1984). However, less that $350.00 worth of secretarial overtime in the course of six years is not excessive. Furthermore, the express mail charges did allow faster communications between counsel and this court and were probably useful. The court, therefore, finds that the express mail charges are not excessive.

The defendant's last objection is to $10,-573.73 [14] in travel expenses incurred by the plaintiff's attorneys.[15] The defendant states that this was also an unnecessary expense because the plaintiff did not need out-of-town counsel, and the expenses should therefore be disallowed as excessive. As previously stated, expenses will only be awarded if they are reasonable. Considering the reasoning behind reducing the attorney fee rates to those commensurate with Indiana rates, and the Seventh Circuit's reasoning in the *Chrapliwy* case, i.e., that the losing party should not have to pay an unnecessarily excessive rate because the plaintiff chose to retain expensive counsel, it logically follows that simply because Atlantic States chose to use an attorney from New York does not mean that the defendant must pay for the extra cost of transporting that attorney back and forth from the relevant forum. *See e.g., Entertainment Concepts, III, Inc. v. Maciejewski*, 514 F.Supp. 1378, 1382 (N.D.Ill. 1981) (disallowing "an out-of-state attorney such items as travel, lodging, parking, and long-distance telephone calls [in a case under 42 U.S.C. § 1988] so as to refrigerate undue enthusiasm for engaging out-of-state counsel."); *Ramos v. Lamm*, 713 F.2d 546, 559 (10th Cir.1983) (stating that because there was no need for outside counsel, travel expense would be disallowed); and *Monsanto*, 721 F.Supp. at 613 (stating that the plaintiff should pay the extra expense for an out-of-state lawyer).

Given, therefore, the controlling theory behind awarding expenses in fee shifting cases, of the $10,573.73 the plaintiff has requested for travel expenses, the court will disallow $8,886.25 in travel expenses representing the nine trips made by Kilsheimer to Ft. Wayne and the one trip made by Tadler to Ft. Wayne. The court, however, will allow $1,399.00 in travel expenses which represent the three trips Kilsheimer made to Syracuse, New York and

---

**13.** The plaintiff billed $345.89 in secretarial overtime and $2,035.31 in express mail. (Plaintiffs' Memo, Exhibit B).

**14.** In the Affidavit of Richard J. Kilsheimer, filed on April 14, 1992, the plaintiff requested $6,978.21 in travel expenses. This figure was revised in the plaintiff's answer to the defendant's interrogatories and the Reply Affidavit of Richard J. Kilsheimer filed on June 19, 1992. There, the plaintiff requested $9,929.76 in travel expenses. However, in that same affidavit, the plaintiff submitted a receipt for a trip Kilsheimer made to Fort Wayne on July 14–15, 1987, and that trip was not factored into the plaintiff's total travel expenses. The cost of that trip was $643.97 bringing the total travel cost to $10,-573.73.

**15.** Travel expenses incurred by Kilsheimer were billed for nine trips to Indiana, three trips to Syracuse, New York, and one trip to Champagne, Illinois. Kilsheimer was accompanied by Tadler on one of these trips to Indiana, and one to Syracuse. Travel expenses included charges for airfare, hotel expenses, and transportation.

the one trip Tadler made to Syracuse, New York. These trips were taken in order to meet with the plaintiff, and would have been necessary even if the plaintiff had secured Indiana counsel. For the reasons just stated, the court will also allow $272.38 [16] in travel expenses for the trip Kilsheimer made to Champagne, Illinois to meet with expert Phillippe Ross. In addition, the court will allow $16.10 billed for in-town transportation. These amount to a total allowable travel expense of $1,687.48.

Based on the foregoing, the court has determined that the lodestar should be calculated as follows:

### LODESTAR CALCULATIONS[17]

| FIRM | HOURS | RATE PER HOUR | TOTAL |
|---|---|---|---|
| Kaplan & Kilsheimer | | | |
| Attorney Fees: | | | |
| Richard J. Kilsheimer: | 871.95 | $150.00 | $130,792.50 |
| Jonathan K. Levine: | 208.00 | 85.00 | 17,680.00 |
| Ariana J. Tadler | 425.00 | 75.00 | 31,875.00 |
| Paralegals | 135.55 | 50.00 | 6,777.50 |
| | 1,640.50[18] | | $187,125.00 |
| Expert Fees: | | | |
| Dr. Fredric C. Menz | | | $ 6,224.07 |
| Dr. Phillippe Ross | | | 9,579.00 |
| Mr. Peter S. Cartwright | | | 4,576.38 |
| | | | $ 20,379.45 |
| Expenses: | | | 18,836.65[19] |
| TOTAL.......... | | | $226,341.10 |
| | | | |
| Beers, Mallers, Backs & Salin | | | |
| Attorney Fees: | | | |
| Peter G. Mallers | 165.80 | $125.00 | $ 20,725.00 |
| Stephen G. Rudolf | 0.30 | 35.00 | 10.50 |
| Mark McKenzie | 6.60 | 30.00 | 198.00 |
| Jane E. Strack | 1.10 | 30.00 | 33.00 |
| Monica L. Wilson | 2.60 | 30.00 | 78.00 |
| Michelle R. Gensel | 0.60 | 30.00 | 18.00 |
| | 177.00[20] | | $ 21,062.50 |
| Expenses: | | | 637.62 |
| TOTAL.......... | | | $ 21,700.12 |

**16.** In the Plaintiff's Response to the Defendant's Interrogatory No. 20, the plaintiff listed the cost of the Champagne, Illinois trip as $212.38. However, according to the travel receipts submitted in the plaintiff's reply affidavit, the travel expense was actually $272.38.

**17.** The court notes that there were a number of errors in the calculations submitted in this case, and is very disappointed that, in a case of this magnitude, the plaintiff was so careless in drafting its submissions.

**18.** The court notes that in the original Kilsheimer affidavit, the plaintiff calculated the total number of hours to be 1,640.00. The court has found it to be 1,640.50.

**19.** In its Reply Affidavit filed on June 19, 1992, the plaintiff, attempting to correct discrepancies in the amount of expenses it had previously requested and what it later found was the amount it was entitled to, revised its calculations and requested the court to award $27,000.72 in expenses. However, this court's calculations place the plaintiff's expenses at $27,078.93. From this number, the court has added the $643.97 in additional travel expenses the plaintiff did not factor in, and has subtracted from that total the $8,886.25 in travel expenses that were disallowed. Allowable expenses therefore equal $18,836.65.

**20.** The court notes that in the Plaintiff's Memo in Support of Fees and Expenses, filed on April 14, 1992, the plaintiff listed the total number of hours expended by Beers, Mallers, Backs & Salin to be 166.70. The court, however, finds that 177.00 hours were expended as stated and documented in the Affidavit of Peter G. Mallers.

| FIRM | HOURS | RATE PER HOUR | TOTAL |
|---|---|---|---|
| Allen, Lippes & Shonn | 6.00 | $125.00 | $ 750.00 |
| | 0.50 | 135.00 | 67.50 |
| | | | 817.50 |
| Expenses: | | | 41.29 |
| TOTAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | $ 858.79 |
| | | | |
| Kathleen Butler, Esq. | 6.50 | $150.00 | $ 975.00 |
| Expenses: | | | 50.00 |
| TOTAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | $ 1,025.00 |
| Atlantic States | | | |
| Attorney Fees: | | | |
| Charles M. Tebbutt | 11.83 | $100.00 | $ 1,183.00 |
| M. Alan Hayes | 24.60 | 100.00 | 2,460.00 |
| Paralegals | 95.90 | 65.00 | 6,233.50 |
| | 132.33 | | $ 9,876.50 |
| Expert Fees: | | | |
| Samuel H. Sage | 76.50 | $140.00 | $ 10,710.00 |
| Donald J. Hughes | 209.17 | 95.00 | 19,871.15 |
| | | | $ 30,581.15 |
| Expenses: | | | 3,984.98 |
| TOTAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | $ 44,442.63 |
| GRAND TOTAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | $294,367.64 |

----

### Conclusion

The Plaintiff's Motion for Attorney Fees and Expenses pursuant to § 505(d) of the Clean Water Act as amended, 33 U.S.C. § 1365(d) is hereby GRANTED IN PART and DENIED IN PART. The plaintiff is hereby awarded attorney fees in the amount of $219,856.50. The plaintiff is also entitled to expenses, including expert witness fees, in the amount of $74,511.14.