**UNITED STATES of America (EPA), Plaintiff,**

**and**

**Supporters to Oppose Pollution, Inc., Intervenor–Plaintiff,**

**v.**

**ENVIRONMENTAL WASTE CONTROL, INC., et al., Defendants.**

**No. S87–55.**

United States District Court, N.D. Indiana, South Bend Division.

April 26, 1990.

Robert Oakley, F. Henry Habicht, Frank Bentkover, Sam Boxerman, U.S. Dept. of Justice, Environmental Enforcement Section, Washington, D.C., Victor A. Franklin, U.S. EPA Region V, Chicago, Ill., Andrew B. Baker, Jr., Asst. U.S. Atty., Hammond, Ind., and Clifford Johnson, Asst. U.S. Atty., South Bend, Ind., for U.S. (EPA).

John C. Hamilton, South Bend, Ind., and Charles Tebutt, Syracuse, N.Y., for STOP.

George W. Pendygraft, George Plews, Indianapolis, Ind., and James H. Pankow, South Bend, Ind., for all defendants.

## MEMORANDUM AND ORDER

MILLER, District Judge.

On March 29, 1989, following a trial encompassing several months, this court imposed significant civil penalties against the defendants for violations of the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6901 *et seq.* ("RCRA"), and entered a permanent injunction against the defendants' operation of the hazardous waste disposal facility known as the Four County Landfill. *United States (EPA) v. Environmental Waste Control, Inc.,* 710 F.Supp. 1172 (N.D.Ind.1989). For purposes of this memorandum, the reader's familiarity with that order is presumed.

In that opinion, the court also determined that an intervening citizen's group calling itself Supporters to Oppose Pollution, Inc. ("STOP") was a prevailing party and, as such, was entitled to recover its costs of litigation relating to the claims on which it succeeded, including reasonable attorney and expert witness fees, pursuant to 42 U.S.C. § 6972(e). Pursuant to the court's finding on this issue, STOP has moved for an award of fees and costs. EWC objects generally to STOP's ability to be reimbursed for attorney fees and other costs and also objects to the requested compensation for certain fees and STOP's proposed lodestar multiplier. STOP's motion has been ripe for review for some time; the court is now ready to rule. This opinion is intended to satisfy the court's obligation to state its reasons for its conclusions when awarding attorney fees. *Kossman v. Calumet County,* 849 F.2d 1027, 1030–1031 (7th Cir.1988).

### I. STOP'S SUBMISSIONS

In support of its application, STOP submits affidavits, with attached documentation, from several people, including its president, Dixie Sefcheck. Mrs. Sefcheck explains that STOP was incorporated in December, 1986 and has never had more than 500 members nor more than $4,000.00 in assets. She explains that STOP was incorporated through the assistance of attorney Nelson Chipman, who communicated with STOP members and the EPA's attorneys through the date of STOP's intervention in this suit. As the litigation increased in complexity, however, Mr. Chipman could not continue to work for STOP for free, and so he began a search for other counsel. Eventually, he contacted John Hamilton, who agreed to represent STOP at a reduced hourly rate of $80.00, with the understanding that he would apply to the court for a fee award at a substantially higher hourly rate if the case were successful.

Mr. Chipman's affidavit outlines the legal work that he provided STOP before John Hamilton was retained. Mr. Chipman first began working for STOP in September, 1986. Mr. Chipman states that his hourly rate was $70.00 and he documented 57.5 hours of legal assistance provided to

STOP. Mr. Chipman reports that he has had a general legal practice since admission to the Indiana bar in 1981.

Even with the reduced hourly rate, STOP could not pay Mr. Hamilton in full. By May 26, 1989, STOP's members had managed to pay Mr. Hamilton $18,437.30. They also had provided Mr. Hamilton with $500.00 toward payment of Dr. Henk Haitjema, who provided STOP with expert assistance, and paid $3,500.00 to Professor Robert Blomquist of the Valparaiso Law School and law student Susan Hartman for consulting work they performed. STOP also paid round trip air fare amounting to $398.00 for a witness to travel to the trial from the State of Washington and round trip air fare in the sum of $644.00 for attorney Charles Tebbutt to travel to Indiana from Syracuse, New York. Finally, STOP expended $978.34 in copying expenses before and during this litigation.

Mr. Tebbutt, an attorney associated with the Atlantic States Legal Foundation ("ASLF"), submitted two affidavits in conjunction with STOP's petition for fees. Mr. Tebbutt's supplemental affidavit reveals that he was first admitted to the bar in 1988 and that his billing rate per hour for environmental legal work is $85.00. Mrs. Sefcheck's affidavits detail the assistance rendered to STOP by the Atlantic States Legal Foundation and its attorneys from before incorporation. Mr. Tebbutt's initial affidavit identifies ASLF as a not-for-profit corporation that has provided STOP with legal and expert consulting services since mid-December, 1986.[1] Mr. Tebbutt represented STOP at trial as co-counsel with Mr. Hamilton and will serve as co-counsel on appeal. Mr. Hamilton's affidavit relates that Mr. Tebbutt interviewed and prepared several witnesses for trial (including Aaron Foster, Walter Block, Jean King, and Don Bowen), provided considerable technical expertise in trial, and provided valuable assistance in preparing for the cross-examination of defendant James Wilkins and in preparing STOP's proposed findings and conclusions. Mr. Tebbutt submitted an accounting of Atlantic States' bill totalling $47,389.49 in his initial affidavit and a detailed description of the work associated with such costs in his supplemental affidavit.

Mr. Hamilton submitted one extensive, principal affidavit in support of the fee request and two supplemental affidavits submitting factual information in response to EWC's objections to the fee petition. Mr. Hamilton explains that he was admitted to the bars of California (1968) and Indiana (1977). His litigation experience covers a broad range of topics, including criminal law, employment discrimination, commercial law, personal injury, real estate disputes, consumer fraud, constitutional law, environmental law, and construction litigation.

Mr. Hamilton first met with STOP members in mid-December, 1987 and undertook to represent STOP at a charged hourly rate of $80.00, with the understanding that should STOP prevail, he would seek a fee award reflecting an hourly rate more in accordance with what he believed to be the prevailing rate for such litigation. When he began representing STOP, Mr. Hamilton was in sole practice, augmented by a part-time county prosecutor position. The preceding June he had departed an eight-member firm he had helped found in 1978. To limit his time on STOP's case, Mr. Hamilton avoided most of the depositions being taken in the case until the defendants counterclaimed against STOP and began discovery on the counterclaim. Mr. Hamilton attended those depositions until the court dismissed the counterclaim on August 2, 1988.

In the months of May, June, and November, 1988, this suit occupied nearly all of Mr. Hamilton's time. The trial then began, continuing over thirty days in December, January, and February. In January, 1989,

---

1. In its response, EWC argued that STOP's award should not reflect Atlantic States' services, because STOP had tendered no information concerning its agreement with Atlantic States. In reply, Mrs. Sefcheck submitted another affidavit indicating that Atlantic States had agreed to assist STOP with payment to follow successful completion of the suit, pursuant to federal statutes.

Mr. Hamilton joined a new firm, bringing to the firm indebtedness arising from his devotion of time to the Landfill litigation.

To Mr. Hamilton's knowledge, the only attorney within ninety miles of South Bend who performs environmental plaintiff's work is Professor Blomquist, who has done such work in northwestern Indiana. Mr. Hamilton states that he, himself, would not have undertaken representation of STOP but for the prospect of a fee award under RCRA. STOP's likelihood of success at the litigation's outset was far from certain, as it sought to hold the defendants to penalties not sought by the EPA. The likelihood of successful collection of a fee award may have been even less, Mr. Hamilton suggests, because of defendant Stephen Shambaugh's history of landfill operation.

STOP also submits the affidavit of Samuel Sage, ASLF's president and senior scientist. Mr. Sage explains the extent of the work he and his organization completed in anticipation of legal action concerning contamination at the Four County Landfill. He reports travel and office expenses incurred by himself and his organization in their investigative efforts. Mr. Sage's affidavit does not give amounts or descriptions of these claimed expenses.

Finally, STOP submits the affidavits of two other attorneys. Thomas Singer, a very experienced litigator in the South Bend, Indiana area, opines that $150.00 constitutes a reasonable hourly rate for an attorney with Mr. Hamilton's experience in complex business litigation in this area, without regard to the contingencies of delay in payment or the obligor's filing of bankruptcy. Bryan Tabler, who has practiced environmental law in the Indianapolis, Indiana area for seventeen years, states that, "Lawyers specializing in environmental matters with over fifteen years' experience commonly command fees of $150.00 per hour and more for work in that subject matter area within Indiana."

Mr. Hamilton reports investment of 737.-95 hours in the case as of May, 1989. He seeks a lodestar determination based on an hourly rate of at least $150.00 and a multiplier of two or three in light of the risk of non-payment. STOP also seeks $47,389.49 for Atlantic States, $8,600.93 for miscellaneous expenses, $3,500.00 for Prof. Blomquist and Ms. Hartman, at $4,780.54 for Dr. Haitjema.

## II. EWC's RESPONSE

The defendants (here collectively called "EWC", as in the March 29 opinion) oppose STOP's petition on several fronts. EWC argues that no fee award should be entered: the statute under which STOP intervened contains no fee-shifting provision, and the statute upon which STOP relies allows for fees only with respect to certain relief, EWC argues, which does not include permanent closure. EWC also states that although this court made an initial determination that STOP was entitled to attorney fees and other costs, it had no real opportunity to respond to STOP's argument on this issue below.

Additionally, EWC objects to Mr. Hamilton's fee calculation in terms of the hourly rate, the number of work hours claimed and the multiplier applied to that charge. EWC challenges Mr. Hamilton's proposed hourly rate as follows: Mr. Hamilton should not, EWC contends, obtain a windfall in excess of the hourly rate he negotiated with STOP; Mr. Hamilton is not an environmental expert and should not be compensated as one.

EWC submits two affidavits in support of its challenge to Mr. Hamilton's proposed hourly rate. One affidavit submitted is that of Robert R. Clark, an Indianapolis attorney concentrating on environmental litigation work. Mr. Clark reports that he has been admitted to practice in Indiana since 1979 and has both defended and prosecuted claims against landfill owners. Mr. Clark opines that the hourly rate for environmental legal work in Indiana varies depending on the reputation, experience, and skills of the particular attorney, but generally ranges from $85.00 to $175.00 per hour.

EWC also submits the affidavit of George M. Plews, one of the attorneys for the defendant in this action. Mr. Plews states that he was first admitted to the

legal practice in Indiana in 1979 and has focused on environmental litigation with his law partner, Mr. George Pendygraft. Mr. Plews reports that pursuant to a fee contract his firm has been paid $125.00 per hour for legal work in this action. Based on the information provided in these affidavits and Mr. Hamilton's asserted lack of expertise in the environmental legal field, EWC contends that the $150.00 hourly rate requested for Mr. Hamilton is unreasonable.

EWC also challenges Mr. Hamilton's claimed hours on several grounds: STOP failed on most of its claims, and the EPA deserves credit for some of the remaining success; much of Mr. Hamilton's time was spent on matters unrelated to case, such as news conferences and administrative agency proceedings. EWC challenges Mr. Hamilton's claim for a multiplier, arguing that hazardous waste landfills are popular targets and that STOP, which had four lawyers at various times, cannot claim to have had difficulty retaining counsel.

## III. PERMISSIBILITY OF A FEE AWARD UNDER RCRA

EWC claims that STOP is not entitled to a fee award. EWC asserts that this issue arose in the final stages of trial and it had no adequate opportunity to address it before the court ruled in STOP's favor on March 29, 1989. 710 F.Supp. at 1247–1248. The court agrees that EWC must have a fair opportunity to address the issue, but the fee award issue loomed from STOP's entrance into the case. The timeliness of EWC's objections is unimportant, however, because the court finds EWC's arguments on this issue to be without merit; the court's previous decision authorizing a fee award to STOP will stand.

■ EWC makes two arguments against the permissibility of STOP's fee request. First, STOP intervened in this action under 42 U.S.C. § 9613, a statutory provision which, unlike §§ 6972(a) and 9659(a), does not contain a fee award provision. Accordingly, EWC argues, STOP has no statutory right to seek reimbursement for its attorney fees and costs. The court previously addressed this argument in its March 29, 1989 opinion, finding that Congress intended an intervenor's suit under 42 U.S.C. § 9613 to be a citizen's suit under companion § 6972 for purposes of assessing fees and costs. EWC raises no new arguments or reasoning on this issue; accordingly, the court simply adopts its earlier discussion in this opinion.

Other federal courts have awarded fees and costs to intervenors that were found to be "prevailing parties who substantially contributed to resolution of the issues presented". *American Public Gas Association v. Federal Energy Regulatory Commission*, 587 F.2d 1089, 1098–99 (D.C.Cir. 1978); *Delta Air Lines, Inc. v. Civil Aeronautics Board*, 505 F.2d 386 (D.C.Cir. 1974); *Monroe v. United Air Lines, Inc.*, 565 F.Supp. 274, 280–81 (N.D.Ill.1983). STOP's status as a prevailing party in this action is discussed below. In a reverse scenario, the Seventh Circuit has assessed costs of an action against a defendant-intervenor even though that party was not found individually liable to the plaintiffs in the trial court. *Charles v. Daley*, 846 F.2d 1057, 1061–70 (7th Cir.1988), *cert. denied* — U.S. —, 109 S.Ct. 3214, 106 L.Ed.2d 564 (1989).

■ EWC's second position on this issue relates to the relief ordered by this court: since neither § 9613 nor § 6928 provide for permanent equitable relief (the only remedy issued by this court towards which, according to EWC, STOP could claim a contributory role), any litigation expenses incurred towards that goal are not compensable under the costs provisions of the statute. In essence, EWC maintains the position that this court is only authorized to award fees incurred towards remedies that are provided for by statute. EWC cites no authority for this proposition absent its own discussion of congressional intent to limit injunctive relief in § 6928 to preliminary orders. Accordingly, EWC claims that since the permanent injunction is based on equitable and not statutory authority, the court lacks any statutory basis for a fee award.

This argument, of course, shadows one of the issues now before the Seventh Circuit on review of the 1989 decree: whether the order of permanent closure of the landfill site is authorized by environmental law and the statutes applicable to this case. It is sufficient for this court to hold that the statute governing attorney fees is not as narrow as EWC argues. STOP is entitled to compensation for expenses incurred to the extent that it prevailed in this action.

## IV. LODESTAR CALCULATION

■ While district courts generally have broad discretion in determining reasonable attorney fees or costs of an action, *Friedrich v. Chicago*, 888 F.2d 511 (7th Cir. 1989); *McGuire v. Sullivan*, 873 F.2d 974 (7th Cir.1989); *Strama v. Peterson*, 689 F.2d 661 (7th Cir.1982); *Syvock v. Milwaukee Boiler Manufacturing Company*, 665 F.2d 149, 162 (7th Cir.1981); *Coop v. City of South Bend*, 635 F.2d 652 (7th Cir.1980), certain standards govern such awards. Analysis begins by computing the "lodestar" amount by multiplying the time spent in hours on a case times the appropriate hourly fee charged for such work in the legal community. *Jackson v. Illinois Prisoner Review Board*, 856 F.2d 890 (7th Cir. 1988); *Lightfoot v. Walker*, 826 F.2d 516 (7th Cir.1987). Upon the prevailing party's submission of documents outlining time spent on the case and a proposed hourly rate for those involved in such work, the court must evaluate the "reasonableness" of each figure before making the lodestar calculation, then may adjust the lodestar calculation up or down by use of a multiplier if it finds that the circumstances of the case so warrant. *Pennsylvania v. Delaware Valley Citizen's Council*, 483 U.S. 711, 107 S.Ct. 3078, 3082, 97 L.Ed.2d 585 (1987); *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *Zook v. Brown*, 865 F.2d 887, 896 (7th Cir.1989).

EWC objects to both prongs of STOP's proposed lodestar calculation, number of hours and hourly rate, on several levels.

## A. Reasonableness of Hours

EWC attacks STOP's calculation of hours in two basic ways. Generally, EWC challenges STOP's status as a prevailing party, claiming that STOP achieved no success on most of its claims. EWC argues that STOP's principal success, the permanent injunction, was due principally to the EPA's proof of shortcomings in the Landfill's groundwater monitoring system. Essentially, EWC argues, to the extent STOP did not simply lose, it rode the EPA's coattails.

EWC also challenges the reasonableness of certain categories of hours that Mr. Hamilton claims, specifically five separate categories of work:

— 36.95 hours attributable to investigating or participating in various administrative proceedings before the Indiana Department of Environmental Management ("IDEM") involving the Landfill.

— 23.20 hours attributable to an unnecessary challenge to District Rule 14(c), with its limitation on the permissible number of requests for admissions.

— 29.1 hours attributable to news conferences and meetings with representatives of the news media.

— More than 100 hours devoted to postjudgment activities largely relating to the Chapter 11 bankruptcy proceedings initiated by the four defendants twelve days after the March 29 judgment.

— 27.3 hours devoted to research on Fed. R.Civ.P. 11 in anticipation of a challenge to the defendants' counterclaim; no Rule 11 motion was filed.

In all, these categories reflect 216.55 or more hours, or nearly thirty percent of Mr. Hamilton's claimed time.

The court first will discuss EWC's general position attacking STOP's ability to claim prevailing party status; specific categories of hours challenged by EWC will then be addressed in turn.

### 1. Prevailing Party Status and Compensable Hours

■ EWC argues generally that if a fee award is to be entered, STOP's counsel should only be compensated for those

hours spent on work ultimately leading to the permanent injunction, STOP's principal achievement. To a large extent, the EWC argues, STOP relied on the EPA for success obtained in the suit. EWC offers no estimate of how much of STOP's attorneys' time reasonably resulted in success on the various issues in the case (prevailing or not) with or without the EPA's assistance.

The permanent injunction against the defendants was an element of relief not sought by the EPA. STOP was a prevailing party; it succeeded on a significant issue in litigation which achieved the benefit it sought in intervening. *Texas State Teachers Ass'n v. Garland Independent School District*, 489 U.S. 782, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989). STOP cannot be said to have earned this result simply by riding on the EPA's coattails; it did so through independent legal representation.

Of course, identification of a prevailing party does not end the court's review of a fee petition. When the case is complex and involves several issues, legal theories, and claims for relief with no single party winning on all of the issues raised, the court must further determine how much of the total legal work expended by a prevailing party is reasonably compensable. *Hensley v. Eckerhart*, 461 U.S. at 434–37, 103 S.Ct. at 1939–41. Classifying issues or claims by degree of success is not an easy task (particularly in complex litigation) and need not be the focus of the court's discussion:

> Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours spent on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended in the litigation.

*Id.* at 435, 103 S.Ct. at 1940. In *City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986), the court echoed its holding in *Hensley* that a district court should look to or at the quality of success obtained and not simply the num-

ber or percentage of claims upon which the petitioning party prevails. 477 U.S. at 568–69, 106 S.Ct. at 2691–92.

Along with measuring the prevailing party's overall success, courts also look at such factors as the overlap of facts between claims, nature of relief obtained from the options sought, and the impact of evidence presented on unsuccessful claims to those that ultimately succeed. *Fast v. School District of City of Ladue*, 728 F.2d 1030 (8th Cir.1984); *Jordan v. Multnomah County*, 694 F.2d 1156 (9th Cir.1982); *Marion v. Barrier*, 694 F.2d 229 (11th Cir. 1982); *Wheatley v. Ford*, 679 F.2d 1037 (2d Cir.1982).

EWC maintains that the EPA, as the initiator of the lawsuit, was the primary force behind many of STOP's claims, which simply mirrored EPA's complaint. To that extent, EWC implicitly argues that STOP's hours should be reduced by any time spent by STOP's attorneys on claims also raised by EPA and those upon which STOP was unsuccessful. EWC makes no specific recommendation for reduction other than those hours spent on categories of work discussed below.

In *Ohio Sealy Mattress Manufacturing Company v. Sealy, Inc.*, 776 F.2d 646, 660 (7th Cir.1985), the district court had determined that the prevailing party had succeeded on only three-fourths of its claims, and so reduced the compensable hours of prevailing counsel by one-fourth. The Seventh Circuit reversed, explaining that notwithstanding the discretion given to the district courts in reasonably determining the propriety of a fee award, a court may not simply separate legal work based on a tally of wins and losses on issues. The district court must further consider the interrelationships of the claims and common sets of facts and evidence present in a case. The court further referred trial courts to those factors discussed in *Hensley*, particularly the distinction between related claims that are central to the issues in a dispute and those clearly unrelated on the peripheral edge of the action. 776 F.2d at 670.

The EPA led the way on many of the trial's principal issues, and STOP's fee

claim reflects that: as noted before, STOP's attorneys did not attend pretrial depositions save during the pendency of EWC's counterclaim against STOP. But STOP also ran the final laps alone and could not have done so without participation in the entire trial. The court can say neither that STOP did not prevail on its theories in common with the EPA nor that the time spent on those common claims was unreasonable.

The factual and legal issues overlapped too greatly to be separated for fee purposes. Accordingly, excluding those hours in specific categories discussed below, the court finds as compensable those remaining hours of legal work documented by Mr. Hamilton, Mr. Tebbutt and Mr. Chipman.[2]

■ EWC objected to Mr. Tebbutt's time on the ground that the record contained no evidence of an agreement with Mr. Tebbutt or ASLF for compensation in a post judgment award. Since the reasonableness and amount of fees assessed in a case are within the court's discretion, prior agreement for fee petitions are irrelevant to the analysis; the issue is the statutory right to reasonable fees, not a contractual right. *Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). Further, STOP provided such evidence in the wake of EWC's objection.

■ EWC does not argue that Mr. Tebbutt's hours duplicate Mr. Hamilton's time. *See Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1160 (7th Cir.1989). In any event, recognizing the complexity of the action and the presence of two attorneys for EWC throughout the trial (and of two to four attorneys for the EPA throughout the trial), the presence of two attorneys for STOP through most of the trial was not excessive.

■ The court must carefully evaluate each of the challenged categories of Mr. Hamilton's time for "reasonableness", *see, e.g., Ustrak v. Fairman*, 851 F.2d 983 (7th Cir.1988), but it is "reasonableness" in the

sense of what an adversary must be required to pay. An attorney's fee may be perfectly reasonable in the context of the agreement with the client, but not "reasonable" for purposes of the fee-shifting statute. *Venegas v. Mitchell*, —— U.S. ——, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990) (plaintiff's attorney could enforce 40% contingency fee agreement on $2.08 million verdict, although plaintiff was awarded only $117,-000.00 under fee award). The discussion that follows focuses on "reasonableness", not in the sense of what STOP may pay its attorneys, but what EWC must pay STOP.

#### a. Administrative Proceedings

■ EWC argues that 36.95 of Mr. Hamilton's hours "were spent probing administrative agency law and working on probing the prospect of intervening in various agency hearings concerning EWC" (Defendants' June 21, 1989 Memorandum in Opposition to Fee Request, at 13), and had no connection to STOP's success at trial. STOP does not appear to question EWC's characterization of those hours, contending instead that the work done on EWC's NPDES permit should be compensable under *Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986).

In *Delaware Valley Citizens Council*, and in *Webb v. Board of Education of Dyer County*, 471 U.S. 234, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985), the Court held that hours spent pursuing optional administrative proceedings could be included in the calculation of a fee award if the work was useful and of a type ordinarily necessary to secure the final result obtained from the litigation. 478 U.S. at 561, 106 S.Ct. at 3096. The record in this case does not disclose that the hours spent with respect to the NPDES permit were useful and of a type ordinarily necessary to secure the final result. The trial saw occasional reference to the NPDES proceedings, and some expenditure of time would have been war-

---

**2.** Apart from the general objections discussed above, EWC does not appear to challenge the hours claimed with respect to Mr. Chipman.

ranted to achieve familiarity with the state of those proceedings. The hours at issue, however, appear to have been dedicated to opposing EWC's position in the NPDES permit proceedings before a state agency. Learning about the proceedings would be compensable, but participation in the proceedings is not.

STOP notes that EWC's attorneys were compensated for their participation in the administrative proceedings. The record does not suggest, however, that EWC's attorneys were retained solely for the federal litigation. RCRA does not warrant a fee award for activities beyond the federal litigation and work useful and ordinarily necessary to obtain a favorable final result in the federal litigation. Such activities are clearly unrelated to those claims in the federal action under the standards set forth in *Hensley v. Eckerhart* and *Ohio Sealy.*

The 36.95 hours devoted to the NPDES permit proceedings must be excluded from the lodestar amount.

### b. Challenge to District Rules' Discovery Limit

█ District Rule 14(c) precludes a party from filing more than thirty interrogatories or requests for admissions without leave of court. EWC challenges 23.2 of Mr. Hamilton's hours that were devoted to preparing a brief challenging that Rule. EWC notes that the magistrate simply granted STOP leave to file its interrogatories and requests without addressing the frontal challenge to the Rule. STOP responds that "paper discovery" was essential to its case in light of its financial abilities and that "[p]reparation of the memorandum attacking Rule 14(c)'s limitation on the number of requests and interrogatories was a preemptive strike anticipating the objection that in fact occurred." (STOP's July 11, 1989 reply memorandum on fees, at 4–5). The memorandum, STOP argues, reduced the time that would have been needed for motions, briefs, and arguments on a request to file more interrogatories and requests than the Rule allows. Finally, STOP notes that prior research in other cases reduced

the time needed to prepare and file the memorandum.

The hours spent on briefing the Rule 14(c) issue must be excluded from the lodestar calculation. It is within the court's discretion to determine the reasonableness of legal work expended in a case for purposes of a fee award. *Friedrich v. Chicago,* 888 F.2d 511 (7th Cir.1989). In its attempt to limit legal expenses to those successes achieved on significant issues, *Hensley v. Eckerhart,* 461 U.S. at 435–437, 103 S.Ct. at 1940–1941, this court cannot find the Rule 14(c) motion to be compensable.

Under District Rule 14(c), a party may request leave to submit additional interrogatories. Although STOP made no such request, apparently preferring to meet the rule head-on, the magistrate went so far as to grant a request not made. Plainly, the motion to hold the rule invalid was unnecessary; as such, it cannot be called reasonable for fee-shifting purposes. Therefore, the court will subtract from the compensable number of hours in its fee award to STOP those 23.2 hours spent by Mr. Hamilton on the 14(c) issue.

### c. Press Conferences; Contacts with News Media

█ STOP explains the inclusion of time devoted to contacts with newspersons on the ground that public opinion began to play a central role in the litigation, in STOP's perception, after EWC filed its counterclaim. The counterclaim alleged that STOP's members and counsel were engaged in slander against EWC. A series of depositions with respect to the counterclaim's subject matter began, then ended when the court granted STOP's motion to dismiss. STOP explains,

> It became necessary to keep the press alert to the case in order to provide psychological sustenance to persons intimidated as a result of the counterclaim and the concomitant campaign of depositions.

> Furthermore, in a case where a citizens group is bringing suit, it appears to be an essential part of one's exercise of First Amendment rights as well as to

fulfill the statutory authorization of such suits that those who are either affected or personally involved receive ongoing information about the case. This information can, and in cases of public moment such as this one was, should, receive that information by way of the media, among other means.

STOP's argument is troubling at many levels. First, it seems to assume that news coverage and publicity play a compensable role in litigation. At least one federal court has deducted those hours spent by attorneys dealing with the press on the grounds that such were excessive, redundant, or otherwise unnecessary to the litigation. *Desisto College v. Town of Howey–In–The–Hills*, 718 F.Supp. 906, 922–23 (M.D.Fla.1989).

A fee award might include time expended in pre-deposition preparation of a timorous witness whose resolve to testify truthfully may be dubious. Here, according to STOP's submissions, EWC had embarked on campaign to take fourteen depositions in connection with the counterclaim. The court cannot conclude, however, that it is reasonable, for fee-shifting purposes, to seek to reassure fourteen deponents through the press, which might or might not produce desired reports that might or might not be read, seen, or heard by the prospective deponents, whose resolve might or might not be strengthened by what they read, see, or hear.

■ Second, STOP's argument seems to confuse the First Amendment right to speak with the statutory right to an award of reasonable attorney's fees. The two rights are not co-extensive. The First Amendment does not guarantee a reasonable hourly rate for speech.

Third, acceptance of STOP's argument would require the court to conclude that news briefings are a necessary and appropriate role of trial counsel. Even assuming that STOP had a legitimate litigative purpose in communicating with the public through the press—such as encouraging persons to contribute to defray the costs of litigation—the court cannot conclude that public relations is a lawyer's task.

It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it.

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir.1974), *quoted with approval in Missouri v. Jenkins by Agyei*, —— U.S. ——, 109 S.Ct. 2463, 2472 n. 10, 105 L.Ed.2d 229 (1989). The record does not reveal the appropriate rate for the services for which STOP claims compensation at a reasonable rate for legal services.

Finally, STOP notes that EWC's counsel "was not loath to do exactly the same thing they now assert is uncompensable", referring to an October 24, 1988 news release issued by EWC's attorneys. The court need not evaluate the propriety of the EWC news release any more than the propriety of STOP's public relations campaign need be assessed. It is sufficient to note that the record reveals neither whether the news release was issued in response to STOP's press contacts nor whether EWC was billed at attorneys' rates for the issuance of the news release. In any event, the opposing news release does not render publicity efforts compensable under a statutory provision allowing an award of reasonable attorney fees.

For the foregoing reasons, the court concludes that the 29.1 hours attributable to Mr. Hamilton's news conferences and meetings with representatives of the news media are not recoverable under 42 U.S.C. § 6972(e). STOP is free to pay Mr. Hamilton for those efforts, but cannot compel EWC to do so.

#### d. Post–Judgment Activities; Bankruptcy

STOP's fee petition also seeks compensation for time spent following the March 29, 1989 judgment, primarily in proceedings before the bankruptcy court. The defen-

dants filed with the bankruptcy court on April 10, 1989. EWC estimates that more than 100 hours of Mr. Hamilton's post-judgment time was spent working on bankruptcy matters and objects to compensating STOP for that time in this case. STOP argues that this time was necessary to secure funds to pay expenses incurred by STOP in litigating this action.

█ Fee awards to prevailing parties occasionally include post-judgment expenses such as successful ancillary activities in claims related to the principal suit, *Craik v. Minnesota State University Board*, 738 F.2d 348, 349 (8th Cir.1984) (per curiam); *In Re Kansas Congressional Districts Reapportionment Cases*, 745 F.2d 610, 614 (10th Cir.1984); *Holsey v. Armour & Company*, 743 F.2d 199, 218 (4th Cir. 1984), *cert. denied* 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 784 (1985) (fees for expenses at the appellate or administrative level), or the prevailing party's efforts to monitor and effect compliance with the court orders, *Garrity v. Sununu*, 752 F.2d 727, 738–39 (1st Cir.1984); *Willie M. v. Hunt*, 732 F.2d 383, 387 (4th Cir.1984) (injunctions and corrective legal actions). Courts have been reluctant, however, to grant fee awards for demonstrably unsuccessful post-judgment ancillary work. *Institutionalized Juveniles v. Secretary of Public Welfare*, 758 F.2d 897, 920 (3rd Cir.1985); *Akbar v. Fairman*, 788 F.2d 1273 (7th Cir.1986).

█ This court cannot reasonably charge defendants for STOP's costs in monitoring proceedings before the bankruptcy court. STOP has not demonstrated how such time will assure or effect compliance with this court's order. While STOP may argue that there is a need to inform the bankruptcy court of EWC's legal and financial obligations in light of the court's ruling and in turn assure that such duties are taken into account in any restructuring or distribution of funds, there has been no showing of a need for STOP to function as such an emissary. The bankruptcy court is aware of the proceedings before this court and has access to the court's March 29 ruling. Accordingly, any time reported in the fee petition relating to work before the bankruptcy court must be excluded from this court's award to STOP.

Time spent by STOP's counsel in the appeal of this case may be compensable if STOP's prevailing party status continues through that stage. Until a ruling from the Seventh Circuit is issued, however, the court cannot award compensation for time spent by STOP at the appellate stage.

### e. Rule 11 Research

█ STOP also seeks compensation for 27.3 hours of time Mr. Hamilton spent in researching and drafting a motion for sanctions against EWC based on EWC's counterclaim. The court dismissed the counterclaim before STOP filed its Rule 11 motion. EWC objects to any fee award based on time expended on the motion for sanctions. The only justification offered by STOP for submitting these hours is the intense nature of the litigation and intimidation experienced by the citizen's group. (STOP's reply memorandum, at 7). Neither reason supports a finding in favor of compensation for these expenses.

As discussed above, the determination of reasonable expenses hinges on both the success of the work and its relation to central issues, particularly those upon which the petitioning party succeeded. STOP's Rule 11 work was never submitted to the court and, therefore, was neither a prevailing nor significant issue in the case. Accordingly, it would be unreasonable to award to STOP costs incurred in the preparation of the motions for sanctions.

### 2. Conclusion

The balance of STOP's attorneys' hours were reasonable for fee-shifting purposes. That time consists of 521.38 hours by Mr. Hamilton, 427.1 hours by Mr. Tebbutt, and 57.5 hours by Mr. Chipman.

### B. Hourly Rate

█ EWC also challenges Mr. Hamilton's argument for an hourly rate of

$150.00.[3] EWC notes that Mr. Hamilton's affidavit does not set forth his own customary rate; Mr. Singer's affidavit speaks of a reasonable fee for attorneys with twenty years experience in complex business litigation, which Mr. Hamilton does not claim; Mr. Tabler's affidavit speaks of a fee for experienced environmental counsel, and Mr. Hamilton has no such qualifications. In opposition, EWC submits the affidavit of Robert R. Clark, who states that a competent plaintiff's environmental bar exists in Indiana and commands an hourly rate ranging from $85.00 to $175.00. EWC further argues that Mr. Hamilton should be held to the $80.00 hourly rate to which he agreed with STOP; EWC contends that Mr. Hamilton agreed to that rate in light of his lack of experience in environmental litigation and his need to generate clients for his fledgling solo practice. EWC also asserts that its attorneys received an hourly rate of no more than $125.00 for legal work in defense of dual complaints raised by both the EPA and STOP.

■ In determining the appropriate hourly charge for legal fees, the court must look first to the prevailing market rate for work by attorneys of similar skill and experience in the legal community. *Blum v. Stenson*, 465 U.S. 886, 895 and n. 11, 104 S.Ct. 1541, 1547 and n. 11, 79 L.Ed.2d 891 (1984); *Spanish Action Committee v. City of Chicago*, 811 F.2d 1129 (7th Cir.1987); *Tomazzoli v. Sheedy*, 804 F.2d 93 (7th Cir.1986). After determining the reasonable market rate or range of rates, the court may adjust that amount up or down to reflect adequately the quality of counsel's work and the case's difficulty. *Henry v. Webermeier*, 738 F.2d 188 (7th Cir.1984); *Illinois v. Sangamo Construction Company*, 657 F.2d 855 (7th Cir.1981).

EWC and STOP seem to be in uneasy accord as to the range of appropriate market rates for an attorney working on this case. EWC submitted a range of hourly rates for the market ($85.00 to $175.00), and STOP's proposed hourly rates ($150.00) falls within that range. EWC argues, though, that Mr. Hamilton should be bound by the rate charged to STOP or $80.00 per hour, especially since he has offered no other rate of fee he customarily charges. Additionally, since Mr. Hamilton admittedly is not an environmental lawyer, EWC argues that his work is unworthy of fees of attorneys who practice in that field (such as those working for EWC at $125.00 per hour) or at the very least unworthy of a fee near the top of the market range. EWC also contends that as Mr. Hamilton has been compensated by STOP at an hourly rate agreed to before taking the case, he should be limited to those fees. The court addresses the arguments in reverse order.

■ Courts have not limited the hourly rate in a fee award to public interest lawyers partially compensated by a foundation or group, but rather have awarded the comparable market rate for the legal services rendered. *Blum v. Stenson*, 465 U.S. 886, 889, 104 S.Ct. 1541, 1544, 79 L.Ed.2d 891 (1984); *Palmigiano v. Garrahy*, 616 F.2d 598, 602 (1st Cir.), *cert. denied* 449 U.S. 839, 101 S.Ct. 115, 66 L.Ed.2d 45 (1980). Similarly, an award of fees is not limited to the amount provided by a contingent fee agreement. *Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). "When the plaintiff's fee arrangement is less than a reasonable fee, the defendant is required to pay the higher amount." *Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1160 (7th Cir.1989). Hence, while the original agreement between counsel and client is a factor to be considered, the award to STOP for Mr.

---

**3.** EWC does not appear to challenge Mr. Tebbutt's requested hourly rate of $85.00. That rate falls at the bottom of the range articulated in the Clark affidavit tendered by EWC, and the court believes it to be reasonable.

EWC's tacit acceptance of Mr. Tebbutt's rate, coupled with EWC's other arguments, raises an interesting anomaly. Mr. Tebbutt was admitted to practice in 1988, during the pendency of this action. EWC contends that Mr. Hamilton, an attorney with twenty years experience, should be held to the hourly rate of $80.00 that STOP agreed to pay him. Such an outcome would seem to stretch the concept of "reasonableness" that is to govern fee awards.

EWC does not appear to challenge Mr. Chipman's requested hourly rate of $70.00, and the court finds that rate to be reasonable.

Hamilton's fee will not be limited to the $80.00 per hour rate simply because it was the rate of pay STOP could afford.

While Mr. Hamilton is not an environmental specialist, he is an attorney with more than twenty years experience. Indeed, based on the affidavits submitted by both STOP and the EWC, Mr. Hamilton appears to have been the most experienced litigator of the attorneys who worked on this case. That he was able to represent his client forcefully and intelligently on issues beyond his regular areas of expertise favors an award in the market rate's upper range, particularly in light of the complexity and novelty of legal issues present in this action.

Since attorneys Plews and Pendygraft, with fewer years of experience than Mr. Hamilton (and with comparably lesser success in this case) have been paid at an hourly rate of $125.00, a rate somewhat above that is appropriate for counsel for the prevailing party. Mr. Hamilton's requested hourly rate of $150.00 is reasonable.

### C. Multiplier

STOP argues for application of a multiplier of two or three to the lodestar calculation for two main reasons. First, STOP argues that the uncertainty of its ability to recover its costs warrants a multiplier, apparently (although not expressly stated) to bring those fees that are recovered more in line with the actual expenses incurred. STOP contends that the present nature of the defendants' financial position and the inevitable delay in payment (because of pending bankruptcy proceedings) justify the multiplier under guidance provided in recent Supreme Court opinions. Second, multipliers have been permitted when the quality of representation has been exceptional, particularly in cases such as this one, involving complex issues of fact and law. STOP concedes that determination of the quality of work provided by STOP's counsel is within the court's discretion.

Unsurprisingly, EWC objects to the application of a multiplier to any lodestar calculation of STOP's fees. Most of EWC's response contests STOP's evalua-tion of the riskiness of this litigation. EWC does not specifically respond to the thrust of STOP's position—justifying a multiplier in terms of the risk involved in collection of costs of the case and not generally the risk of outcome of the litigation—other than to suggest that Mr. Hamilton already has received partial payment from STOP, which also paid some of the other expenses incurred. EWC challenges the quality of STOP's legal representation, again stating that Mr. Hamilton is not by experience an environmental lawyer and was working with the assistance of other STOP attorneys as well as counsel for the EPA.

The Supreme Court has suggested that the application of a multiplier or an upward adjustment to the lodestar calculation of fees may be appropriate in some cases, depending on the exceptional quality of legal representation, the riskiness of the outcome in litigation, the delay in payment of costs, and the risk of collection on a fee award. *Pennsylvania v. Delaware County Citizen's Council for Clean Air*, 483 U.S. 711, 723–24, 107 S.Ct. 3078, 3085–86, 97 L.Ed.2d 585 (1987); *Blum v. Stenson*, 465 U.S. 886, 896–97, 104 S.Ct. 1541, 1547–48, 79 L.Ed.2d 891 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). The Court has assigned the petitioning party the burden of proof with respect to the multiplier; in none of the cited cases did the Court find that burden to have been met. *Blum v. Stenson*, 465 U.S. at 888–89, 104 S.Ct. at 1543–44; *Delaware County II*, 483 U.S. at 730–32, 107 S.Ct. at 3089–90.

While the EWC is correct that the Seventh Circuit has not been a wholehearted supporter of the use of the multiplier, *Skelton v. General Motors Corp.*, 860 F.2d 250, 253 (7th Cir.1988), *cert. denied* — U.S. ——, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989); *McKinnon v. City of Berwyn*, 750 F.2d 1383 (7th Cir.1985); *Kamberos v. GTE Automatic Electric, Inc.*, 603 F.2d 598 (7th Cir.1979), *cert. denied* 454 U.S. 1060, 102 S.Ct. 612, 70 L.Ed.2d 599 (1981), the Seventh Circuit has approved its application by some district courts based on reasons that

STOP presents as justification for a multiplier in this case. This circuit, though, has never approved a multiplier of the amount requested by STOP, *In Re Congressional Districts Reapportionment Cases*, 704 F.2d 380 (7th Cir.1983), and has only affirmed district courts' application of a multiplier on facts that weigh heavily in favor of such use. *Zipes v. Trans World Airlines, Inc.*, 846 F.2d 434 (7th Cir.1988) (upward adjustment affirmed with multiplier of 1.44 based on four-year lag time between judgment and order granting fee petition); *In Re Burlington Northern, Inc. Employment Practices Litigation*, 803 F.2d 279 (7th Cir.1986) (no multiplier appropriate; party did not meet burden of proof on issue of exceptional quality of legal services); *Ohio Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 776 F.2d 646, 660 (7th Cir.1985) (use of multiplier to compensate for time value of money within district court's discretion); *Lynch v. Milwaukee*, 747 F.2d 423 (7th Cir.1984) (court declined request for multiplier of 25% because case was not complicated and did not preclude attorney from other legal work); *In Re Congressional Districts Reapportionment Cases*, 704 F.2d 380 (7th Cir.1983) (court allowed multiplier of 20% based on several compelling factors: quality of legal work was exceptional, outcome was to public benefit, case extended over a lengthy time, issues were complex and novel); *Bonner v. Coughlin*, 657 F.2d 931 (7th Cir. 1981) (per curiam) (court rejected argument for multiplier as factual issues were not complicated, case had little precedential value and attorneys were not precluded from other employment).

■ Turning first to the risk factor, STOP may well be correct that bankruptcy proceedings will either delay or prevent collection of all or part of its fees. The potential for such a scenario is not persuasive support for use of a multiplier. While the Seventh Circuit has recognized the use of a multiplier to adjust for the time value of money, it has done so after delay had occurred and within the discretion of the district court. *Zipes v. Trans World Airlines, Inc.*, 846 F.2d 434; *Ohio Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 776

F.2d 646. While STOP's fees may be in jeopardy before the bankruptcy court, any increase in fee award by a multiplier seems particularly inappropriate given the defendants' depleted assets. If delay in payment occurs as STOP anticipates, the more appropriate embodiment of redress for such delay would be an interest rate added to the fee award. Based on the facts as presently known, STOP has not met its burden of proof for the multiplier on its risk factor argument alone.

■ The court agrees that the quality of legal representation in STOP's case was high. Such high quality does not compel use of a multiplier; excellence in legal work can be compensated in the court's choice of an appropriate hourly rate. *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760 (7th Cir.1982), *cert. denied* 461 U.S. 956, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983); *Ohio Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 776 F.2d at 660. Having found STOP's lead counsel entitled to an hourly rate at the upper end of the market range appropriate for this type of environmental litigation, the court does not find that the legal work provided by STOP's counsel so exceptional as to justify a still higher rate of compensation. While this case involved complex issues, STOP's counsel did not shoulder the burden of such complexity alone; to some extent, at least, STOP relied on the EPA's evidence and argumentation. The $150.00 hourly rate for Mr. Hamilton and the other costs of legal work granted in this order sufficiently compensates STOP's counsel for quality.

No other factors favor the use of a multiplier. The case hardly can be described as having dragged on for an inordinately long period of time: the trial of thirty-days began less than a year after Mr. Hamilton entered his appearance, and judgment was entered forty-four days after final argument. While some of the issues involved in the case were novel and hence promised certain risks in outcome, it is significant that the EPA already was prosecuting the action; STOP's alternative was to allow the EPA to proceed with an action for lesser remedies, not to sit idly and ignore RCRA

violations. In sum, while some evidence speaks for use of a multiplier, the court does not believe use of a multiplier to be appropriate here.

## V. OTHER EXPENSES AND CLAIMS

STOP claims four additional categories of expenses: (1) $11,957.18 for the work of Atlantic States Legal Foundation[4]; (2) $8,600.93 for miscellaneous expenses; (3) $3,500.00 for legal work performed for STOP by Professor Robert Blomquist and law student Susan Hartman, increased by a factor of four; and (4) $4,780.54 for Dr. Henk Haitjema, an expert witness for STOP at trial.

 EWC objects to the amount of fees requested for Dr. Haitjema on the ground that such evidence went to issues won by the EPA and not STOP. To the extent, however, that STOP presented evidence, the EPA was not victorious alone; STOP's presentation of Dr. Haitjema added to the victory and is thus compensable. Further, the amount requested for Dr. Haitjema is reasonable. *See Friedrich v. City of Chicago,* 888 F.2d 511 (7th Cir.1989). STOP has documented the costs of his expenses and his charges for the expertise rendered. Dr. Haitjema's fees should be included in the award to STOP.

 EWC apparently does not object to the base amount of fee requested for Prof. Blomquist and Ms. Hartman, but objects to a multiplier of four to that amount. The sole justification for such an upward adjustment is STOP's conclusory statement that $3,500.00 is inadequate given the amount of work provided. STOP bears the burden of proof justifying the application of a multiplier to these charges. *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Absent such proof, the court does not find a fee beyond the base amount to be reasonable. Accordingly, the award will include the $3,500.00 spent for consulting services, unenhanced by a multiplier.

 EWC objects to the fees requested for Atlantic States Legal Foundation generally by noting the lack of documentation for these charges. Since EWC's response to the petition, additional materials verifying these expenses have been filed, including Samuel Sage's affidavit with an attached resume supporting the expertise he rendered to ASLF, and Charles Tebbutt's supplemental affidavit with attached receipts documenting travel and other related expenses. These documents support the reasonableness of the fees requested for ASLF.

Finally, EWC objects to those additional expenses requested by STOP in the amount of $8,600.93 claiming that STOP has not documented those charges. Mr. Hamilton filed a supplemental affidavit on July 11, 1989 with attachments outlining the origins of these expenses. The only uncertain item in this documentation is the charge for witness fees of $1,258.58 which Mr. Hamilton states is inaccurate since some witnesses did not cash the checks provided to them. Mr. Hamilton's supplemental affidavit documents checks totalling $754.18; STOP will be compensated only for these witness fees.

 42 U.S.C. § 6972 of the United States Code includes costs and expert witness fees in those amounts compensable in a fee award. This provision for costs and witness fees includes such items as expenses for travel, photocopying, telephone costs, and general out-of-pocket expenses. *Kossman v. Calumet County,* 849 F.2d 1027 (7th Cir.1988); *Bright v. Land O'Lakes, Inc.,* 844 F.2d 436 (7th Cir.1988); *Heiar v. Crawford County,* 746 F.2d 1190 (7th Cir.1984), *cert. denied* 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985). Those additional expenses requested by STOP fall within these approved categories. Moreover, given the complexity of the litigation and the volume of documents involved, the costs claimed by STOP do not appear excessive, but entirely reasonable.

---

**4.** STOP's claim is couched in terms of $47,389.49 for ASLF, but $36,303.45 of that figure reflects attorney fees for Mr. Tebbutt. The court already has addressed the attorney fee issue.

The court, therefore, approves STOP's request for the additional expenses, reduced only by witness expenses unpaid by Mr. Hamilton, in the amount of $7,652.53.

### VI. CONCLUSION

For all of the foregoing reasons, the court now GRANTS STOP's request for attorney fees and costs incurred in this case. The defendants are ordered to pay to the intervenor-plaintiff the sum of $146,-425.70, consisting of the following:

(1) legal work performed by attorney John Hamilton at an hourly rate of $150.00 for 521.38 hours, totalling $78,-207.00;

(2) legal work performed by attorney Charles Tebbutt at an hourly rate of $85.00 for 427.1 hours, totalling $36,-303.45;

(3) legal work performed by attorney Nelson Chipman at an hourly rate of $70.00 for 57.5 hours, totalling $4,025.00;

(4) $3,500.00 for consulting services provided by Prof. Robert Blomquist and Susan Hartman;

(5) $11,957.18 for expenses and non-attorney services of the Atlantic States Legal Foundation;

(6) $4,780.54 for the participation of expert witness Dr. Henk Haitjema; and

(7) $7,652.53 for additional and incidental expenses incurred by STOP.

SO ORDERED.